(46 South. 117.)

No. 16,745.

NATIONAL FIRE INS. CO. v. BOARD OF ASSESSORS. et al.

(March 16, 1908.   Rehearing Denied April 13, 1908.)

TAXATION—DEBTS DUE NONRESIDENTS.

Debts due on open account to a nonresident are taxable at the domicile of the debtor, when they have arisen out of a business carried on in the taxing state, and form part of the capital of the business.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, §§ 437–439.]

Breaux, C. J., and Monroe, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court Parish of Orleans; George Henry Théard, Judge.

Action by the National Fire Insurance Company against the board of assessors and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Parkerson, Bruenn & Breazeale, for appellant. Francis Charles Zacharie (Harry Prentiss Sneed, of counsel), for appellee state tax collector. George Hitchings Terriberry, for appellee board of assessors. Henry Garland Dupré, Asst. City Atty., for appellee city of New Orleans.

PROVOSTY, J. The National Fire Insurance Company, plaintiff in this suit, is a corporation of Connecticut, and domiciled at Hartford, in that state. It carries on its business in this state through a general agent in New Orleans. This agent employs subagents throughout the state. The company extends no credit to its customers. The premium must be paid in cash to the agent at the delivery of the policy; and, whether it is paid or not, the agent owes the amount to the company from that moment as if paid. But the agent, as a matter between himself and the customer, extends 30, and sometimes 60, days' credit to the customer. The agent, however, settles with the company only every 30 days; so that, while the company is at no the shares have been transferred to others

time the creditor of its customers, it is all the time the creditor of the general agent for premiums on policies which have been issued, but not yet settled for.

For the year 1906 the board of assessors for the parish of Orleans fixed the average amount thus due to the plaintiff company by the agent for premiums issued in the course of the business done in this state at $37,500. Whether the amount thus fixed was too large or too small is not shown by the record, and is not a question in this case, since this is not a suit for reduction of assessment.

The plaintiff has brought this suit to set aside this assessment on the ground that it has no credits situated in the state of Louisiana.

The fact of plaintiff's having the said credits against the said general agent is not denied; and hence the question is not as to whether the plaintiff has the credits, but as to whether they are taxable.

It will be noticed that the thing assessed is not a particular item of indebtedness, but the average amount due to the plaintiff in this state as the result of the business done in this state, and representing, therefore, an amount of capital constantly kept invested by the plaintiff in the business done in this state. The first question is whether the fact that the credit instead of being extended directly to the customers, is extended to the agent, who in turn extends it to the customers, makes any difference. We do not think it does. The credit still represents a value, or an amount of capital, invested in the business in this state. The interposition of the agent does not alter the situation. The value represented by the credits is still in the business. If the credit were not extended to the agent, the amount in question would not be here to aid the business of the plaintiff in its competition with the business of the resident insurance companies. The probability

is that, if the plaintiff did not extend this 30 days' credit to the agent, he, in turn, could not extend it to the customer.

The next question arising is whether the revenue law requires the taxing of credits of the character of those here involved; that is to say, not isolated or transitory credits, but the constant average of the credits arising out of a business done in this state. The revenue law is Act No. 170, p. 346, of 1898. It provides as follows:

"Section 1. All rights, credits, bonds, and securities of all kinds, promissory notes, open accounts, and other obligations."

And after a long and exhaustive enumeration of every possible and imaginable kind of property, rights, and credits, it concludes with the following generalization:

"And all movable and immovable, corporeal and incorporeal articles or things of value, owned and held and controlled within the state of Louisiana by any person in any capacity whatsoever."

Section 7:

"Provided, further, that in assessing mercantile firms the true intent and purpose of this act shall be held to mean, the placing of such value upon the stock in trade, all cash, whether borrowed or not, money at interest, open accounts, credits, etc., as will represent in their aggregate a fair average on the capital, both cash and credit, employed in the business of the party or parties to be assessed. And this shall apply with equal force to any person or persons representing in this state business interests that may claim a domicile elsewhere, the intent and purpose being that no nonresident, either by himself or through any agent shall transact business here without paying to the state a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising from the business done in this state, and at the business domicile of said nonresident, his agent or representative. It shall be the duty of the assessor to examine into and acquaint himself with the insurance carried upon the property, and in determining the value of said stock or assets the average amount of insurance carried by the assured during the twelve months preceding the date of valuation of same shall be by the assessor considered in determining the value of said property.

"Every insurance company doing business in this state shall, on or before the first day of March, in each year, render to the Secretary of State a report, signed and sworn to by its pres-

ident and secretary, of its condition upon the preceding thirty-first day of December, which shall include a detailed statement of its assets and liabilities on that day, the amount and character of business transacted in this state, moneys received and expended during the year and such other information and in such form as he may require."

Section 91:

"The term 'credit' includes every claim and demand for money, labor, merchandise, and other valuable things.

"The word 'person' or 'persons,' 'taxpayer' or 'taxpayers,' shall be held to include firms, companies, associations and corporations; all words importing the masculine gender shall apply to females also, and all words in the plural number shall apply to single individuals in all cases in which the spirit and intent of this act require it."

This law, it is argued, applies only to the assessment of mercantile firms. But how could this be, when there comes immediately after the first proviso, which in its terms has reference only to mercantile firms, the following: "And this shall apply with equal force to any person," etc.—and when, again, a special paragraph in the same section is devoted to insurance companies by name. If, therefore, there is any meaning to the English language, this section 7 has reference to all "persons, firms, companies, associations and corporations" doing business in the state, irrespective of what may be the character of their business, and has reference especially to insurance companies.

Next, it is said that the settled jurisprudence of this state and of the country is to the effect that credits like those here in question —that is to say, not evidenced by the written acknowledgment of the debtor—cannot be said to be situated in the state when due to a nonresident, and as a consequence are not taxable in this state, since the state has not the right to tax property not situated within its borders.

There can be no doubt that a state has not the right to tax property not situated within its borders, and for the nonce it may be conceded that isolated or transitory credits may be taxed only at the residence of the creditor; but between an assessment of an isolated or transitory credit, and an assessment of the average credits standing on open account in a permanent business and representing that much capital permanently invested in the business, the later jurisprudence has established a distinction. Thus in the recent work of Gray on Limitations of Taxing Power, par. 89, we find the following:

"In other recent cases it has been held that credits in the form of notes, choses in action, and book accounts, belonging to a foreign corporation doing business in the taxing state, which credits resulted from its business operations in the state, are taxable."

The learned author, when he uses the expression, "In other recent cases it has been held," etc., is desirous, evidently, of being extremely guarded and conservative in his language; for we find the result of the decisions stated by other recent law writers as follows:

"A foreign corporation, which is liable for personal taxation for sums invested in this state, is taxable upon credits and bills receivable which are in this state and are due the corporation for merchandise sold by it in the transaction of business in this state. People ex rel. Yellow Pine Co. v. Barker, 23 App. Div. 524, 48 N. Y. Supp. 1113, affirmed 155 N. Y. 665, 49 N. E. 1103." Hammond on Taxation of Business Corporations, p. 22, par. 29.

"And it is well settled that choses in action, whether book accounts, promissory notes, or other credits due in the regular course of business carried on by a foreign corporation within a state, are taxable." Beale on Foreign Corporations, p. 647, § 488.

But it is said that the jurisprudence of this court is to the contrary effect, and to a certain extent the statement is true; but this court has very greatly receded from the advanced position it once occupied on the question of the taxability of credits, and the constantly recurring cases, both in the Supreme Court of the United States and in this court, show very clearly that, on these questions of taxation, the jurisprudence of the country is yet in an unsettled condition—in fact, that it is trying to keep pace with the nonresident

corporations in their shifts for evading the taxation which home institutions with which they are in competition have to bear.

The first or leading case in this court is Barber Asphalt Co. v. City, 41 La. Ann. 1015, 6 South. 794. The credits there involved were paving certificates; that is to say, were evidenced by writings of a very high evidentiary character, having, indeed, almost the force of judgments. This court held broadly that credits, or other incorporeal rights, were taxable only at the domicile of the creditor. The court made no distinction between incorporeal rights that are in concrete form and those that are not.

The next decisions in order of time were London & Liverpool & Globe Ins. Co. v. Board of Assessors, 44 La. Ann. 760, 11 South. 91, 16 L. R. A. 56, and Railey v. Board of Assessors, 44 La. Ann. 765, 11 South. 93, which were companion cases involving the same kind of credits, namely, credits due for premiums on fire insurance policies. On the authority of Barber Asphalt Co. v. City, supra, the court decided that the credits had their situs at the domicile of the creditor and were not taxable here. But the court, on the authority of the decision of the Supreme Court of United States in the case of State Tax on Foreign-Held Bonds, 15 Wall. (U. S.) 300, 21 L. Ed. 179, qualified the doctrine of the Barber Asphalt Co. Case to this extent: that it admitted that incorporeal rights might assume such a concrete form as to be taxable at the place where the concrete evidence of the debt was situated, as in the case, for instance, of "bank notes, public securities, and possibly negotiable promissory notes, bills of exchange, or bonds."

In Clason v. City, 46 La. Ann. 1, 14 South. 306, the court set aside an assessment of credits arising from deposits of money in bank subject to check. The court cited the decisions just mentioned, and said it could not distinguish between a debt arising from a deposit in bank and one due from any other cause.

But in the next case in order of time (Bluefields Banana Co. v. Board of Assessors, 49 La. Ann. 43, 21 South. 627) this court held bank deposits to be taxable, putting its decision on the solid ground that the taxability of credits should not be made to depend upon any mere fanciful fictions as to the situs of debts, but upon the question of fact whether or not the capital represented was or was not permanently invested or employed in the business transacted in this state. The court distinguished Clason v. City, supra, and in fact, though not in terms, overruled Barber Asphalt Co. v. City, Liverpool, London & Globe Ins. Co. v. Board, and Railey v. Assessors, supra, since those decisions were founded upon the legal fiction "Mobilia sequuntur personam," and upon absolutely nothing else.

Next in order of time came Parker v. Strauss, 49 La. Ann. 1173, 22 South. 329, which involved the same kind of credits as Clason v. City, supra—that is to say, arising from the bank deposits to be drawn against in the purchase of cotton for export. The court maintained the assessment, on the authority of Bluefields Banana Co. v. Board, supra. The decision is not very satisfactory in its reasoning. It seems to hold that, if the thing taxed had been a mere credit, it would not have been taxable, but that, inasmuch as it was not a mere credit, but was cash in bank, it was taxable. The latter proposition is contrary to the plain fact and the recognized doctrine, and contrary, moreover, to what was expressly held in Clason v. City, supra. So plain is it that money deposited in bank subject to check ceases to be the property of the depositor, and that after having made the deposit the depositor

has no other property than a credit upon the bank, that the court can hardly be supposed to have intended to hold the contrary, but must be supposed to have simply intended to express the idea which served as the foundation of the Bluefields Co. decision, namely, that capital employed in business in this state is taxable here, although in the form of mere credits.

The next case in order of time was Liverpool, London & Globe Ins. Co. v. Board of Assessors, 51 La. Ann. 1028, 25 South. 970, 45 L. R. A. 524, 72 Am. St. Rep. 483. There can be no denying that in this case the court went back to the doctrine of the cases that had preceded Bluefields Banana Co. v. Board and Parker v. Strauss—that is to say, reinstated the fiction of "Mobilia sequuntur personam" as a guiding principle in the matter of the exercise of the taxing power, and abandoned the idea that the question as to the situs of the credit was one purely of fact, to be determined from the circumstances of each case; but in the later cases of Metropolitan Life Ins. Co. v. Board of Assessors, 115 La. 707, 39 South. 846, 9 L. R. A. (N. S.) 1240, 116 Am. St. Rep. 179, and Monongahela Coal & Coke Co. v. Board of Assessors, 115 La. 564, 39 South. 601, 2 L. R. A. (N. S.) 637, 112 Am. St. Rep. 275, this court went back to the doctrine of Bluefields Banana Co. v. Board and Parker v. Strauss, and the court prefers to adhere to this later jurisprudence. See decision in General Electrical Co. v. Board of Assessors (this day handed down) infra, 46 South. 122, where the question involved in this case is more elaborately considered.

Judgment affirmed.

NICHOLLS, J., concurs in the decree. MONROE, J., dissents.

See dissenting opinion of BREAUX, C. J., 46 South. 120.