PROVOSTY, J.
Mrs. Popp died in Mississippi, where she and her husband, John P. Popp, were then residing, in 1910. The inheritance tax collector claims an inheritance tax of her succession, because the property *467 left by her was situated in Louisiana. It consisted of one-half of $397,308 of securities which as a whole belonged to the community of acquSts and gains that had existed between her and her husband, and was kept by him in his bank box in this city. He ■continued in possession of this property, and retained it until his death in September, 1918. His second wife and universal legatee resists the tax on the ground that at that time the Popps were domiciled in Mississippi, as well as residing there, and that the statute levying this tax does not apply to nonresidents or aliens.
[1,2] “According to the general construction and effect of the statutes imposing succession taxes, the transfer of any property which is situated within the state and subject to its jurisdiction is subject to the payment of the tax, although the decedent was a resident of another state or an alien.” 37 Cyc. 1560, citing decisions from New York, North Carolina, Pennsylvania and England. And in Supp. 1914-1917, citing decisions from the following additional states: Iowa, Kentucky, Minnesota, New Jersey. And in Annotations for 1918, citing decisions from the following additional states: California, Maryland. And in Annotations for 1919, citing the following additional states: Illinois, Wisconsin. One New York case is cited from 4 N. Y. S., which apparently conflicts; but the doctrine of the text is founded on several later cases. One case is cited contra; that of Succession of Harrow, 140 La. 570, 73 South. 683, L. R. A. 1917D, 281. We find ourselves compelled to overrule that decision. Section 19 of the inheritance tax statute (Act 109, p. 173, of 1906) provides that—
“In the case of a nonresident decedent, the district court * * * of any parish in which he loft property, movable or immovable, shall exercise such jurisdiction” for the collection of the tax.
This provision, to which the attention of the court was not attracted in this Harrow Case, leaves no room for argument but that the statute does apply to the successions of nonresidents. Moreover, it is hard to see how the successions of nonresidents could escape from the express terms of the following'other provisions of the statute. Section 1 imposes the tax upon “all” inheritances ; and the intention to include “all” is further indicated by the fact that the exceptions intended to be allowed are in section 2, expressly specified, and the successions of nonresidents are not included in these exceptions. By section 3 it is made unlawful for “any” heir, legatee, or other beneficiary to take possession of “any” part of the inheritance without an order of court. By section 6:
“No executor or administrator shall deliver any inheritance or legacy until the tax thereon shall be fixed and paid.”
By section 17:
“No bank, banker, trust company, warehouseman, or other depositary and no person or corporation or partnership having on deposit or in possession or control any moneys, credits, .goods or other things or rights of value of a person deceased, * * * and no corporation the stock or registered bonds of which are owned by a person deceased shall deliver or transfer such moneys, credits, stock, bonds or other things or rights of value to any heir or legatee of such deceased person, unless the tax due thereon under this act shall have been paid.”
[3] An inheritance tax is not a tax upon the property itself but on the privilege or right to inherit; and in the case of a nonresident this right to inherit does not exist by virtue of the laws of the taxing state but by virtue of the laws of the state of residence of the decedent. The court reasoned from this, in the Harrow Case, that the inheritance tax statute could not apply to the succession of a nonresident. But that reasoning would have been equally apposite in all cases from the several states mentioned hereinabove, and yet in all these cases the successions of nonresidents or aliens were *469 held to be within the statute, although probably in most, if not in all, of them there was not to be found a provision similar, or equivalent, to said section 19 of our statute, indicating conclusively that the successions of nonresidents were intended to be included. The doctrine of this Harrow Case is not, of course, that the Legislature would be without power to impose an inheritance tax upon the succession of a nonresident when the property of which the succession consists is situated in this state, for hardly anything is better settled now than that the Legislature may do that very thing; the doctrine of the case goes no further than that our statute is not to be interpreted in that sense. But in view of the said express provision of section 19 there is no room for interpretation, and all discussion must cease. In the Succession of Westfeldt, 122 La. 836, 48 South. 281, the property involved was real estate situated in North Carolina, which, of course, could not be taxed in Louisiana, and it is noteworthy that at the very next session of the Legislature after the decision in the Harrow Case was handed down the Legislature amended the statute so as to make all mistake as to its applying to the successions of nonresidents impossible in the future.
The question of whether Mr. Popp was not domiciled in this state in 1910, and his wife with him, is left in doubt by the evidence. We forego the discussion of it as -not necessary to the decision of the case.
[4] The inheritance tax law in force in 1910 (Act 109, p. 173, of 1906) was amended by Act 42 of 1912 so as to reduce the tax from 5 per cent to 2 per cent; and the question arises which of these laws governs in this case. This later statute is by its express terms applicable to “all successions not finally closed, or in which the final account has not been filed”; and therefore by its terms governs this case.
But the collector contends that in so far as reducing the tax it is unconstitutional, because violative of article 69 of the Constitution, which reads:
“Art. 69. The General Assembly shall have no power to release, * * * in whole or in part, of the indebtedness, liability or obligation of any corporation or individual to the state, or to any parish or municipal corporation thereof: Provided, the heirs to confiscated property may be released from all taxes due thereon at the date of its reversion to them.”
Very plainly, if this tax was an existing “liability or obligation” to the state at the date of the passage of the said act of 1912, the Legislature was powerless to release or extinguish it in whole or in part; the question must therefore be as to whether it was such.
Section 1 of said Act 109 of 1906 reads:
“That there is now and shall hereafter be levied, solely for the support of the public schools, on all inheritances, legacies and other donations mortis causa to or in favor of the direct descendants or ascendants of the decedent, a tax of two per centum, and on all such inheritances or dispositions to or in favor of the collateral relatives of the deceased, or strangers, a tax of five per centum on the amount or the actual cash value thereof at the time of the death of the decedent.”
There can be no disputing that by this law the tax was levied, and that while the word “levy” as applied to a tax varies in meaning according to the context (Clifton v. Hobgood, 106 La. 535, 31 South. 46), it has as here used the meaning of “impose”; so that this tax had actually long been levied or imposed upon the succession of Mrs. Popp when the act of 1912 was adopted. And there can be as little doubt that a tax which has been actually levied or imposed upon a person or property is a debt of that person or property. In Templeton v. Board, 16 La. Ann. 117, the syllabus, which correctly expresses the doctrine of the case, reads:
“It is not the state tax roll which creates the indebtedness for the local tax; it is the ordinance which levies 'the tax.”
*471 In other words the levy of a tax creates an indebtedness. This inheritance tax is imposed in advance upon all inheritances, and therefore it strikes and fastens to them the instant they come into existence. When the right or privilege of Mr. Popp to take the succession of his wife came into existence hy her death, eo instanti this inheritance tax struck and fastened to that right or privilege entitling the state to be paid 5 per cent, of the succession. Only hy his renouncing the inheritance and nobody else accepting it could said tax have been unfastened and the state have ceased to be a creditor for it. This tax was a debt, since it could and should have been paid; and, it being such, the Legislature was powerless in 1912 to “release or extinguish” it “in whole or in part.” The tax must therefore be computed at 5 per cent.
[5] The cases of Succession of Pritchard, 118 La. 883, 43 South. 537, Succession of Stauffer, 119 La. 66, 43 South. 928, and Cahen v. Brewster, 203 U. S. 552, 27 Sup. Ct. 174, 51 L. Ed. 310, 8 Ann. Cas. 215, relied upon by the learned counsel of Mrs. Popp, do not hold that a debt or obligation in favor of the state does not come into existence the moment the right or privilege to inherit comes into existence by the death of the decedent Their doctrine is simply that the tax being imposed, not upon the property itself, but upon the transmission of it from the decedent to the heir or legatee, it affects all inheritances which at the time of its imposition have not yet been finally transmitted to the heir or legatee in due course of law. This by no means signifies that the imposition of it does not create a debt. That a debt is created from the moment of the death of the decedent is patent from the fact that from that moment there is a debt which may be paid. On the day of the death of his wife Mr. Popp might have gone to the inheritance tax collector and paid this tax.
It may not have been his duty to do so until he had opened the succession of his wife and in due course established the exact amount that was due ;■ but certainly his duty was to open the succession without undue delay, and in due course to pay this tax, and his failure so to do brought him clearly within the prevision of section 24 of the inheritance tax statute; section 24 of Act 109 of 1906 reading:
“Be it further enacted, etc., the taxes hereby levied shall bear interest at the rate of two per cent, per month, beginning six months after the death of the decedent; saving to any heir, legatee or donee the right to stop the running of interest against him by paying the amount of his tax with accrued interest, or by tendering the same to the tax collector in the manner prescribed by the general law; provided, however, that in cases in which the settlement of the succession is not unduly delayed, or in which the right of any party to receive an inheritance or legacy is contested, and in all cases in which the failure to pay tax or any legacy or inheritance within the period aforesaid is not imputable to the laches of the heir or legatee, the court may, in its discretion, remit such interest.”
The 2 per cent, per month here mentioned is therefore due by the succession of Mrs. Popp.
[6] Since this opinion was written the learned counsel for Mrs. Popp has submitted a supplemental brief in which the contention is made that it was not by inheritance that the first Mrs. Popp’s half of the community property passed to her hhsband, but as an effect of his having changed his domicile to Mississippi. In other words, that, if married people of this state change their domicile to another state where the law of community of acquets and gains does not prevail, the wife ipso facto loses her rights to the community property, which becomes at once the husband’s separate property. If this is so, Louisiana husbands have at their disposal an easy method of transferring to themselves the interest of their wives in community *473 property. All they have to do is to go and live at Bay St. Louis, Pass Christian, Biloxi, or some other place on the Mississippi coast. The proposition is startling, to say the least. In the elaborately and learnedly contested case of Succession of Packwood, 9 Rob. 438, 41 Am. Dec. 341 and Id., 12 Rob. 334, 43 Am. Dec. 230, the court announced the law to be that—
When the spouses “cease to reside here, the law ceases to operate as to their future acquisitions, although a change of domicile does not involve a loss of the inchoate rights of the wife in the property acquired, nor does it, in our opinion, operate to vest in the wife irrevocably her share of the acquSts, separately from the husband. It is the property found at the dissolution of the marriage which constitutes the body of acquets and gains.”
What is meant by the property not vesting in the wife “irrevocably” by a change of domicile to another state where the law of community of acquets and gains does not prevail is that the husband does not by such removal lose the control and right of disposal of the community property which he enjoyed before his removal. This is made plain by the following, taken from the same case, at page 442 of 9 Rob. (41 Am. Dec. 341):
“First. On the removal of Packwood with his wife, who resided in Louisiana, in 1804, the laws in force at that time establishing and regulating the matrimonial community of gains operated upon the property acquired during their residence here; it becoming property of the community.
“Second. On their change of domicile, in 1836, by returning to reside in a state where a different law prevails, the law of Louisiana ceased to operate upon acquisitions of property made afterwards here, where neither party resided, whatever may be the effect of such removal as to property previously acquired during their residence; and consequently, if Packwood had acquired property here after his removal to New York, it would have been his, according to the law of. .his domicile.
“Third. The executor of the last will of a testator who was domiciliated and died in. another state; deriving his powers from a probate court of Louisiana, administers only on the property of the deceased situated in Louisiana. That part alone of the estate of the testator is under the control of the courts of this state. Whatever estate, therefore, Mrs. Packwood may have left in New York, is to descend and to be administered according to the law of that state.
“Another proposition has been contended for by the counsel for the appellees, which, it is supposed, would have an important bearing on the decision of this cause, to wit, that on the removal of Packwood and his wife to New York the community which existed between them here ceased, not only as to future acquisitions, but that the parties became vested at once, each with one undivided half, and the power of the husband was terminated in relation to it. We are not prepared to subscribe to this doctrine to its full extent. It would go to exonerate property acquired here from liability for debts contracted afterwards during the marriage ; it would authorize the wife, no longer a resident here, but still subject to marital authority, to assert her rights, independently of that authority, to require a liquidation of all debts due by the husband, distinguishing between those contracted in Louisiana and those contracted elsewhere; it would deprive the husband, while the marriage still exists, of the fruits of the property acquired here, upon which the expenses of the family are an essential charge; in short, it would lead to all the consequences which by law follow from natural death, divorce, or separation from bed and board. We cannot doubt the authority of the husband, after his removal, to administer the property acquired here, any more than his right to enjoy the fruits of the total property; and we cannot recognize in Mrs. Packwood any distinct separate title vested in her before her death. One-half of the property acquired in Louisiana then vested in her heirs, subject to the payments of the debts contracted by the husband during the marriage. Up to that period the husband had, in our opinion, entire control over the property, subject to the restrictions in the Code upon his power of alienation in fraud of her rights.”
It will be noted that the court here says that the control of the husband over the property after his removal is “subject to the restrictions of the Code upon his power of alienation in fraud of her rights.”
Moreover, there is nothing in this record to show that the law of our sister state is *475 not the same as ours as to community of acqubts and gains.
[7] Another proposition of this supplemental brief is that as the property in the case at bar consisted of movables, its situs must be considered as having followed the domicile of the pax-ties, under the maxim mobilia sequuntur personam. But that maxim, which is based on pui-e fiction,, cannot defeat the operation of a statute imposing a tax. National Fire Ins. Co. v. Board of Assessors, 121 La. 108, 46 South. 117, 126 Am. St. Rep. 313; General Electric Co. v. Board of Assessors, 121 La. 116, 46 South. 122.
The judgment appealed from is therefore set aside, and this case is remanded to the trial court to be proceeded with in accordance with the views herein expressed. The succession to pay the costs of this appeal.
O’NIELL, X, dissents and hands down reasons. See 83 South. 769.