In re the MARRIAGE OF Elizabeth M. WHELCHEL and Leon Whelchel.

Upon the Petition of Elizabeth M. Whelchel, Appellant,

And Concerning Leon Whelchel, Appellee.

No. 90–1153.

Court of Appeals of Iowa.

Aug. 27, 1991.

Walter A. Kollmorgen of Kollmorgen & Schlue, Belle Plaine, for appellant.

Randall B. Willman of Leff, Leff, Leff, Haupert & Traw, Iowa City, for appellee.

Considered by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

DONIELSON, Judge.

Beth and Leon Whelchel were married in Texas in 1975. They moved to Iowa from Texas in 1986. They have three children, girls born in January 1977 and December 1980 and a boy born in August 1986. The dissolution decree placed the children in joint legal custody and in Beth's primary

physical care. These custody provisions are not challenged in this appeal.

Leon, fifty years old at trial, is employed as a pilot earning a net income of slightly over $2,800 per month. From 1965 to 1983 he was employed as a pilot by Continental Airlines. In 1983 Continental filed for bankruptcy protection, and Leon's employment was terminated. He later received a lump sum retirement benefit of $154,794.11 for his service with Continental.

Beth has not been employed outside the home during the marriage. She now plans to complete her college education and obtain a teaching certificate. She testified this would probably take three years.

The parties had substantial assets including a Merrill Lynch cash management account acquired while the parties were married and living in Texas. Leon started this account with $20,000 in proceeds from the sale of real estate he owned before the marriage. He also placed his lump sum retirement benefit of $154,794.11 in this account. Beth contributed $20,000 in gifts and inheritances from her family to the account. The parties have continued to maintain the account in Texas, despite their move to Iowa. The court valued the account at $214,758.

In dividing the Merrill Lynch account between the parties, the district court first set aside to Leon the sum of $85,996.72. The court found this amount constituted the portion of Leon's lump sum retirement benefit which had accrued prior to the marriage. The court then set aside to Leon the $20,000 with which he had started the account. Next, the court set aside to Beth the $20,000 she had contributed to the account from gifts and inheritances. These set-asides left a balance of $88,761.28; the court directed that this balance be divided evenly between the parties. In total, Leon received $150,377.36, and Beth received $64,380.64.

The court awarded the parties' house, valued at $55,000, to Beth, but gave Leon a $10,000 lien against the house. The lien, bearing interest of seven percent per year, is payable when the last of the parties' children becomes emancipated or dies.

In addition to these assets, Beth was awarded a car, household goods, and savings of about $17,600. Leon was awarded a car, household goods, savings of about $9,450, two antique airplanes of uncertain value, and an airplane hangar valued at $16,000.

The court directed Leon to pay Beth child support of $1,220 per month while all three children are eligible for support, $813.33 per month when two children remain eligible for support, and $406.66 per month when only one child remains eligible for support.

The decree also directed Leon to pay Beth rehabilitative alimony of $400 per month for thirty-six months or until she dies or remarries. Neither the alimony nor the child support are to cease upon Leon's death, but are to be a lien against his estate.

Beth has appealed from the dissolution decree. In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, but are not bound by them. Iowa R.App.P. 14(f)(7).

I. *Property Division.* Beth, first, challenges the division of the Merrill Lynch cash management account. She contends she should receive half the account, after a set-aside to Leon for the $20,000 in premarital property with which he started the account. She contends this result should be reached under the principles of community property because the account was acquired and kept in Texas. In the alternative, she contends the same result should be reached under Iowa's equitable distribution principles, even if Texas law is inapplicable.

The first question presented is one of choice of law. That is, whether Texas or Iowa law should be applied in dividing the corpus of the Merrill Lynch cash management account and to what stages of the analysis should it be applied. To answer

this question, we must examine the property characterization and division schemes of the two states to determine whether there is an actual conflict.

■ A. *Iowa Law.* Iowa is an equitable distribution state. Under Iowa law the partners in the marriage are "entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Havran,* 406 N.W.2d 450, 452 (Iowa App.1987). The distribution of the property of the parties should be that which is equitable under the circumstances after consideration of the criteria codified in Iowa Code section 598.-21(1). *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983). Section 598.21(1) of the 1989 Iowa Code provides in relevant part:

The court shall divide all property, except inherited property or gifts received by one party, equitably between the parties after considering all of the following:

a. The length of the marriage.

b. The property brought to the marriage by each party.

c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

d. The age and physical and emotional health of the parties.

e. The contribution by one party to the education, training or increased earning power of the other.

f. The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

g. The desirability of awarding the family home or the right to live in the family home for a reasonable period to the party having custody of the children, or if the parties have joint legal custody, to the party having physical care of the children.

h. The amount and duration of an order granting support payments to either party pursuant to subsection 3 and whether the property division should be in lieu of such payments.

i. Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

j. The tax consequences to each party.

k. Any written agreement made by the parties concerning property distribution.

l. The provisions of an antenuptial agreement.

m. Other factors the court may determine to be relevant in an individual case.

Pension benefits are treated as marital property in Iowa and are subject to equitable distribution. *In re Marriage of Mott,* 444 N.W.2d 507, 510–11 (Iowa App. 1989).

B. *Texas Law.* Texas is a community property state. The general theory behind the community property scheme is that "husband and wife should share equally in property acquired by their joint efforts during marriage." Note, *Community Property in a Common Law Jurisdiction: A Seriously Neglected Area of the Law,* 16 Washburn L.J. 77, 79 (1976). *See Matthews v. Houtchens,* 576 S.W.2d 880, 883 (Tex.Civ.App.1979) ("[T]he right and duty of a court trying a divorce case is to apportion the property of the parties under principles of equity, i.e., in a manner which would seem just and fair under all circumstances."). Texas law characterizes the spouses' property in the following manner:

(a) A spouse's separate property consists of:

(1) the property owned or claimed by the spouse before marriage;

(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

(b) Community property consists of the property, other than separate property, acquired by either spouse during marriage.

Tex.Fam.Code Ann. § 5.01 (Vernon Supp. 1990).

Guiding the division of the spouses' property, section 3.63(a) of the Texas Family Code Annotated states: "In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and children of the marriage."

■■■ C. *Conflict of Laws.* A technical conflict does exist between the characterizations placed on the property by Texas and Iowa law. Under the Texas community property system, any property brought into the marriage by one spouse is that spouse's separate property. *See* Tex.Fam. Code Ann. § 5.01(a)(1) (Vernon Supp.1990). In Iowa, the concept of marital property does not automatically exclude this property; but rather, directs the dissolution court to take such property into consideration in making an equitable distribution of the marital property. *See* Iowa Code § 598.-21(1)(i) (1989).

Leon had worked for Continental, earning a portion of his pension, prior to the marriage. Texas law characterizes that portion of the pension earned before the marriage as separate property. *See Dessommes v. Dessommes,* 505 S.W.2d 673, 681 (Tex.Ct.App.1973) (on rehearing, concluding that retirement benefits should be treated as separate property to the extent they represent deferred compensation for services rendered before marriage). Therefore, it seems Texas law prohibits the division of that portion of Leon's pension. Iowa law does not.

Beth argues the lump sum pension was deposited along with other funds in the account and such commingling causes all portions of the pension to lose their separate character. Therefore, according to her argument, no conflict exists because the entire pension is subject to division as it would be under Iowa law.

■■ Texas law, by constitution, statute, and case law, establishes a strong presumption that all property held at the time of dissolution is community property. *See* Tex. Const. art. XVI, § 15; Tex.Fam.Code Ann. § 5.02 (Vernon Supp.1990); *Tarver v. Tarver,* 394 S.W.2d 780, 783 (Tex.1965). To rebut this presumption, the spouse challenging the community character of the property must demonstrate its separate character. *See Matthews v. Houtchens,* 576 S.W.2d at 883–85. The court took judicial notice of Texas Family Code Annotated section 5.02, the statute codifying this presumption. *See* Iowa R.Civ.P. 94. The party with the burden must demonstrate the separate character of the property with clear and satisfactory evidence. *See In re Marriage of Read,* 634 S.W.2d 343, 346 (Tex.Ct.App.1982).

From an examination of the record, we find that Leon adequately demonstrated the separate character of a portion of the pension. The court correctly determined the sum. There is a conflict between the two states' prescription for the characterization of the property.

D. *Choice of Law in Characterizing the Property Interests.* "When marriage is ended by divorce ... there are frequent problems in determining the marital property rights of the spouses. These problems are compounded if there is doubt as to which state's law will define those rights." Weintraub, *Obstacles to Sensible Choice of Law for Determining Marital Property Rights on Divorce or in Probate: Hanau and the Situs Rule,* 25 Hous.L.Rev. 1113, 1113 (1988). "Family law, in particular, presents some rather unique problems in the field of conflicts of law." Comment, *Conflicts of Law in Divorce Litigation: A Looking-Glass World?,* 10 Campbell L.Rev. 145, 145 (1987). "The *Restatement (Second) of Conflict of Laws* was published in 1971, and drafted before many states had departed from rigid lex loci choice-of-law rules." *Id.* at 1125. Iowa had changed its position before 1971. *See Fabricius v. Horgen,* 257 Iowa 268, 274–75, 132 N.W.2d 410, 414–15 (1965). *See also* R.

Weintraub, Commentary on the Conflict of Laws § 6.15, at 318–21 n. 53 (3d ed. 1986).

The Restatement of Conflict of Laws sections 258, 289–90 (1934) provided that "the law of the state in which the spouses are domiciled governs dissolution of their marriage and their interests in movable property." *See* Note, *Marital Property Rights of Separately Domiciled Spouses and Conflicts of Laws*, 22 J.Fam.L. 311, 318 (1983–84). The Restatement rule, while providing a degree of predictability and uniformity, was simply too inflexible, failing to consider relevant policy issues. *See* Comment, *supra* at 147. Flexibility was added by the Restatement (Second) of Conflict of Laws, published in 1971. *Id.*

> The Restatement (Second) of Conflicts drops the territorial location of vested rights approach in favor of applying the laws of the state with the most significant relationship to the parties, property or issue. Although principles espoused by the first Restatement, such as choosing the law of the state of domicile, situs, or aquisition, are incorporated in the second Restatement's approach, they are relegated to the status of factors instead of rules used in choosing the correct law. The second Restatement is much more flexible in that it guides a court to the choice of the correct law by means of "Choice–of–Law Principles" instead of hard and fast rules of choice.

Note, *supra*, at 325 (citing Restatement (Second) of Conflict of Laws § 6 (1971)).

> As applied to the interests of a spouse in movables aquired by the other spouse during marriage, this approach refers a court to the local law of the state with the most significant relationship to the spouses and the movable, with the greatest weight being given to the law of the state of the spouses' domicile at the time of acquisition.

*Id.* at 325 (discussing *Lane–Burslem v. Commissioner of Internal Revenue*, 659 F.2d 209 (D.C.Cir.1981)).

The Iowa courts have not determined the choice of law rule applicable in deciding which state's law applies to issues of property characterization and distribution in di-vorce actions involving parties who own personal property in a community property state. In other areas of the law, Iowa has adopted, as choice of law doctrine, the "most significant relationship" rule espoused by the Restatement (Second) of Conflict of Laws. *See, e.g., Lindstrom v. Aetna Life Insurance Co.*, 203 N.W.2d 623 (Iowa 1973) (contract issue); *Berghammer v. Smith*, 185 N.W.2d 226 (Iowa 1971) (tort issue). *See also Seco International, S.A. v. Cory*, 522 F.Supp. 254, 313 (S.D.Iowa 1981), *aff'd*, 683 F.2d 1201 (8th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982).

■ Restatement (Second) of Conflict of Laws section 258(1) (1971) provides:

> The interest of a spouse in a movable acquired by the other spouse during the marriage is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the movable under the principles stated in § 6.

We adopt this provision as our choice of law rule in determining whether Iowa or Texas law should be applied in characterizing and distributing the corpus of the parties cash management account in Texas.

> Section 6 of the Restatement provides:
> [T]he factors relevant to the choice of the applicable rule of law include
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971). Further guiding us in our analysis of which state has the most signif-

icant relationship to the spouses and the account, the Restatement provides:

> In the absence of an effective choice of law by the spouses, greater weight will usually be given to the state whether [sic] the spouses were domiciled at the time the movable was acquired than to any other contact in determining the state of the applicable law.

*Id.* at § 258(2). *See* Annotation, *Conflicts of Laws as to Disposition of and Relative Rights to Bank Deposits in the Names of More Than One Person*, 25 A.L.R.2d 1240, 1241 (1952) (rights in a bank deposit registered in the names of both spouses are governed by the law of the state where the deposit has been made and the account is kept). *See also* Annotation, *Change of Domicile as Affecting Character of Property Previously Acquired as Separate or Community Property*, 14 A.L.R.3d 404, 414 (1967) (the character of property is determined by the law of the spouses' domicile at the time of acquisition). *See also* Oldham, *Conflict of Laws and Marital Property Rights*, 39 Baylor L.Rev. 1255, 1273 (1987) (at common law interests in personal property acquired during marriage were determined by the law of the marital domicile at the time of acquisition).

■ Guided by these principles, together with the fact that the parties acquired this account shortly after being married in Texas, we find that Texas has the most significant relationship to the issue of characterizing the corpus of the account. *See generally Wallack v. Wallack*, 211 Ga. 745, 88 S.E.2d 154 (1955); *Succession of Popp*, 146 La. 464, 83 So. 765 (1920); *Succession of Packwood*, 9 Rob. (La.) 438, 41 Am.Dec. 341 (1845); *but see In re Estate of Crichton*, 20 N.Y.2d 124, 228 N.E.2d 799, 281 N.Y.S.2d 811 (1967). Therefore, Texas law governs the parties' rights in the account and should have been applied in characterizing the property. It is not clear which state's law the district court applied. The outcome reached by the district court is consistent with the application of community property or marital property principles.

■ E. *Choice of Law in Dividing the Property.* However, once the property

was characterized, the trial court should have applied Iowa law in dividing the property. Under the circumstances of this case, the two states' laws are not in apparent conflict on the issue of property division. Once the property has been characterized as marital or community property, both states' laws provide for equitable distribution of the property. Furthermore, the Texas property division statute, Texas Family Code Annotated section 3.63 (Vernon Supp.1990), was not pleaded or proved. We, therefore, must treat the Texas law as though it were identical to Iowa law. *See Berghammer v. Smith*, 185 N.W.2d 226, 230 (Iowa 1971).

■ Under Iowa law the spouses are "entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Havran*, 406 N.W.2d at 452. In light of these considerations, we find the division of the Merrill Lynch cash management account to be just and equitable, and we affirm the district court on this issue.

II. *Judicial Lien and Rehabilitative Alimony.* Beth also contends that the appellate court should either (1) eliminate Leon's $10,000 lien on the house awarded to her, or (2) increase her three-year rehabilitation alimony award from $400 per month to $800 per month.

■ We consider property division and alimony together in evaluating their individual sufficiency. *In re Marriage of Dahl*, 418 N.W.2d 358, 359 (Iowa App. 1987); *In re Marriage of Griffin*, 356 N.W.2d 606, 608 (Iowa App.1984).

The partners in a marriage are "entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Havran*, 406 N.W.2d at 452.

■ Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). The discretionary award of alimony is made after considering those factors listed in Iowa Code section 598.21(3)

(1989). *See In re Marriage of Hayne,* 334 N.W.2d 347 (Iowa App.1983).

We find the $10,000 lien awarded to Leon and the $400 per month alimony award granted to Beth to be just and equitable. We affirm the district court's division of the property and award of alimony.

The costs of this appeal are taxed to Beth.

For all the reasons stated, the district court's judgment is affirmed.

AFFIRMED.

OXBERGER, C.J., concurs.

HAYDEN, J., specially concurs.

HAYDEN, Judge (specially concurring).

I concur in the result.