I,KATZ, J.,
dissenting in part, affirming in part.
I respectfully dissent from the majority decision to affirm the trial court’s judgment insofar as the trial court judgment: (1) dismisses the Supplemental Petition of June Coleman to Partition the federal pension benefits of Leslie Leon Robinson, Jr., attributable to the time both spouses were residing in Louisiana in accordance with the formula set forth by the Supreme Court in T.L. James & Co., Inc. v. Mont *70 gomery, 332 So.2d 834, at 852-853 on Rehearing (La.1975) (2) grants the Declaratory Judgment in favor of Leslie Leon Robinson, Jr., as it affects his federal pension benefits and (3) denies legal interest on the $25,000.00 loan from Leslie Leon Robinson, Jr., to June Coleman from August 1, 1997, (date of maturity) until paid and for the costs of having to bring suit on the promissory note.
I would affirm the trial court judgment insofar as it: (1) grants Leslie Leon Robinson, Jr., judgment on the promissory note; (2) denies the Motion for Summary Judgment filed on behalf of Leslie Leon Robinson, Jr.; (3) denies any other relief requested by Leslie Leon Robinson, Jr., or June Coleman.
| ^Background:
The plaintiff and defendant were married on June 30, 1955, and lived together until they physically separated in January, 1986. During all or most of this period of time Mr. Robinson was employed by the federal government as an administrative law judge. The federal government transferred Mr. Robinson several times outside of Louisiana and then transferred him back to Louisiana. Mrs. Robinson followed Mr. Robinson wherever his tour of duty brought him. However, in January, 1986, the parties physically separated and Mrs. Coleman filed a petition for legal separation based on abandonment against Mr. Robinson in the Civil District Court. A judgement of separation was obtained on March 26,1986.
As Mrs. Robinson was filing her petition for legal separation, Mr. Robinson was moving to North Carolina. On December 18, 1986, Mr. Robinson filed a petition for divorce in the Civil District Court and after obtaining a preliminary default he then decided not to obtain a final divorce judgement in New Orleans. Subsequently, the defendant filed an action for divorce in Mecklenburg County in North Carolina and obtained a divorce judgement in North Carolina on July 20,1987.
On July 28, 1987, the defendant signed a document prepared by his North Carolina attorney and entitled “Separation, Support and Property Settlement Agreement” (“Agreement”) while residing in North Carolina and then mailed it to the plaintiff in Louisiana who then signed it in Louisiana on August 27,1987. Also, the plaintiff has continued to reside in Louisiana.
The defendant testified at the hearing in the Civil District Court to the following: he was employed with the Office of Hearings & Appeals, Social Security Administration as an Administrative Law Judge from 1965 through December, 1992; he began receiving Civil Service System pension benefits ¡¡¡effective January, 1993 in the approximate sum of $4,000.00 monthly; he remarried on December 28, 1989 and moved to Mississippi and then to Tennessee in 1992 where he was residing at the time of the hearing in December, 1997 in the Civil District Court.

Discussion:

It is the contention of the defendant Mr. Robinson that under the “Agreement” he is entitled to full ownership of the federal pension benefits because the “Agreement” states that North Carolina law applies to the interpretation of the “Agreement” and according to the language in paragraph 3 of the “Agreement” the ex-wife has relinquished all rights to the federal pension.
However, Mr. Robinson must have entertained some doubt as to the validity of his position because he chose not to simply rely upon the “Agreement” as written. Rather, he filed suit in North Carolina seeking a declaratory judgment to support his contention that the ex-Mrs. Robinson had relinquished and transferred to him any interest she may have had to his federal pension by virtue of her having signed the “Agreement”.
Needless to say, Mr. Robinson and his North Carolina attorney must have been dumbfounded by the reception given by the North Carolina trial Court and then the Court of Appeal — since both courts *71 denied Mr. Robinson the “insurance” he was seeking to deny the ex-Mrs. Robinson her interest in Mr. Robinson’s federal pension. See Robinson v. Hinckley, 119 N.C.App. 434, 458 S.E.2d 715 (1995). In fact, the North Carolina Court of Appeal very clearly stated: “...nor did she (Mrs. Robinson) at any time seek to invoke the protection of North Carolina law or its enforcement mechanisms in the negotiation.”
Hence, it is obvious that the North Carolina courts were sending a clear message that North Carolina had no interest in applying its law to this “Agreement” and was signaling the parties to return to Louisiana and Louisiana |4law for a resolution of their respective rights arising out of the property settlement that ensued the legal separation and divorce.
But Mr. Robinson is not the first to have tried to disenfranchise an ex-spouse of her interest in community property by applying non-Louisiana law to the settlement of community property. As long ago as 1919 the argument was made to the Supreme Court of Louisiana in Succession of Popp, 83 So. 765, 146 La. 464 at page 768 (1919) that: “...if married people of this state change their domicile to another state where the law of community of acquets and gains does not prevail, the wife ipso facto loses her rights to the community property, which becomes at once the husband’s separate property.”
The Supreme Court responded with this sobering observation: “If this is so, husbands have at their disposal an easy method of transferring to themselves the interest of their wives in community property. All they have to do is to go and live at Bay St. Louis, Pass Christian, Biloxi, or some other place on the Mississippi coast. The proposition is startling, to say the least." Succ. of Popp, supra, at 768.
In the case sub judiee, Mr. Robinson has merely exhibited a new twist to an old scheme in an attempt to deprive his ex-spouse of her interest in the federal pension. And it is equally obvious that the North Carolina courts are not going to condone or bless these legal machinations.
The public policy of Louisiana is very clear that a spouse’s entitlement to retirement benefits is determined under the law of states in which the parties were domiciled for respective periods of time during which the benefits accrued. See Allen v. Allen, 484 So.2d 269 (La.App.3rd Cir.1986), writ denied, 488 So.2d 199 (La.1986), U.S. cert. denied, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986) (“Rights to retirement benefits accrue continuously throughout the husband’s period of service, and the wife’s entitlement to those benefits should be determined under the law of the States in which the parties were domiciled for the respective periods during which |Rretirement benefits accrued”); Little v. Little, 513 So.2d 464, 471 (La.App.2nd Cir.1987) (“...a portion of the military retirement pay, which a former husband is receiving but which had not vested nor matured on the date of termination of the community or of divorce (some 20 years previously), is properly classified as community property under Louisiana law and is subject to division in accordance with Louisiana law governing matrimonial regimes”); Messersmith v. Messersmith, 86 So.2d 169, 173 (La.1956) (“There is nothing more fundamental in our law than the rule of property which declares that this community is a partnership in which the husband and wife own equal shares, their title thereto vesting at the very instant such property is acquired...”); Blackwell v. Blackwell, 606 So.2d 1355 (La.App.2nd Cir.1992) at 1358 (“Retirement benefits are incorporeal movable property which generally accrue over a significant period of time. The classification of this movable property as community or separate calls for the court to look to the parties’ domicile for the period during which these retirement benefits accrued. The status of this movable property as community or separate is determined by the law of the State where it was acquired. Succession of Dunham, 408 So.2d 888 (La.1981); *72 Howard v. Howard, 499 So.2d 222 (La.App.2nd Cir.1986); Succession of Adger, 457 So.2d 146 (La.App.2d Cir.1984); Whatley v. Whatley, 439 So.2d 444 (La.App.2nd Cir.1983)”; Fleming v. Fleming, 30 So.2d 860 (La.1947) at page 861 (“When Fleming (husband) and his wife established their domicile in Louisiana they came under the community property system of this State with respect to all property acquired by them after their arrival. CC Art. 2401”); T.L. James & Company, Inc. v. Montgomery, 332 So.2d 834 (La.1975) at page 851, on rehearing (“The value of the right to share in the retirement and profit-sharing funds is an incorporeal, movable right. When acquired during the existence- of a marriage, the right to share is a community asset which, at the dissolution of the community, must be so classified — even though at the time acquired or at the time of dissolution of a |ficommunity, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time”); Sherrill v. Sherrill, 639 So.2d 794 (La.App.2nd Cir.1994) at page 800 (“Since their legal separation, Mr. & Mrs. Sherrill have co-owned the military retirement benefits.) Hare v. Hodgins, 567 So.2d 670 (La.App.5 Cir.1990), writ granted, 571 So.2d 638 (La.1990); affirmed in part and reversed in part, 586 So.2d 118 (La.1991); Lamartiniere v. Lamartiniere, 520 So.2d 828 (La.App.3rd Cir.1987). See also CC art. 797 effective January 1, 1991. As a co-owner, Mrs. Sherrill has the right to demand partition of the military retirement benefits, and this right to partition is imprescriptible. Hare, 567 So.2d at 672”). See Moreau v. Moreau, 457 So.2d 1285 (La.App.3 Cir.1984) at 1289 for the proposition that the ex-wife is not precluded from filing a supplemental petition to partition the ex-husband’s retirement pay where the original partition agreement contains no language which would transfer the ex-wife’s interest in the ex-husband’s retirement. See also Moon v. Moon, 345 So.2d 168 (La.App.3rd Cir.1977), writ denied, 347 So.2d 250 (La.).
The majority opinion relies upon paragraph 13 of the Agreement which designates the laws of North Carolina to govern the interpretation of the provisions of the Agreement and Civil Court Article 3540 which at first blush appears to permit parties to a contract to designate which state laws shall apply in interpreting the contract.
It is true that the first part of the sentence in CC Art. 3540 states that “All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties...” However, the last part of this sentence clearly states that there is an exception to the freedom of choice of law by the parties to an agreement. This exception reads as follows: “...except to the extent |7that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.”
And CC Art. 3537 provides inter alia: “...an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.”[1]
In other words, the parties are not completely free to choose any state’s laws to apply; rather, the parties must consider the respective states’ public policy with respect to the property issues involved. This is in accord with subparagraph (f) under the Revision Comments to Civil Code Article 3540 which contains the following language: “However, the application of the chosen law is subject to limitations imposed by the public policy of the state whose law would otherwise, that is, *73 in the absence of an effective choice of law by the parties, be applicable under Article 3537. The parties may not, by simply choosing another law, evade the public policy of the state whose law would have been applicable to the issue but for the parties’ choice.” (underlining added for emphasis).[2]
Under the cited jurisprudence, it is clear that Louisiana has a very strong public policy supporting the concept of community property whereas North Carolina has no public policy supporting community property. It also follows that the public policy of Louisiana in protecting the rights of the non-employee spouse in the pension benefits attributable to the service while domiciled in Louisiana is superior to any interest of North Carolina. It is equally obvious that Mrs. Robinson acquired an incorporeal movable right to one-half of the federal pension benefits attributable to the time they resided in Louisiana and | Rup until the Judgment of Separation in 1986 notwithstanding the fact that Mr. Robinson did not begin receiving any pension benefits until 1993.
The final issue to be discussed is the language found in the “Agreement” and which is cited in the majority opinion for the proposition that the ex-spouse Mrs. Robinson relinquished any rights she may have had to the federal pension of Mr. Robinson.
Paragraph 3 of the agreement reads as follows:
The Wife, for herself, her heirs, executors, administrators, and assigns, hereby releases and relinquishes unto the Husband, his heirs, executors, administrators, and assigns, all right of future support, all right of dower, inheritance, descent and distribution, and right to dissent from his will, and any and all other rights arising out of their marriage relationship, and to any and all property or interest in property, real, personal, and mixed, now owned or hereafter acquired by Husband, and hereby agrees that Husband henceforth may acquire, hold, manage, alienate, lease, and convey his property without her knowledge, further consent, or joinder, in accordance with the provisions of law, the same as if she never had been married to him, and further hereby does release, relinquish, and renounce any and all right to administer upon his estate.
This is general boiler-late language and does not specifically mention the incorporeal movable right of Mrs. Robinson to a portion of the federal pension of Mr. Robinson.
By the same token, Mr. Robinson in paragraph 4 reciprocally “releases and relinquishes unto wife (Mrs. Robinson)...any and all other rights arising out of their marriage relationship”.
|Jn actuality the boiler-plate language used in paragraphs 3 and 4 is identical and effectively nullifies any transfers of marital property between Mr. and Mrs. Robinson notwithstanding the arguments by Mr. Robinson and the majority opinion. Accordingly, the Agreement is void insofar as it attempts to transfer any of Mrs. Robinson’s incorporeal rights to the pension to Mr. Robinson and Mrs. Robinson is entitled to a judgment acknowledging her interest to a portion of the federal pension of Mr. Robinson attributable to the time the parties were residing in Louisiana and up to the Judgment of Separation in 1986.[3]
*74 Accordingly, under the public policy limitations as expressed in Civil Code Articles 3540, 3537 This is general boiler-plate language and does not specifically mention the and 3515 I conclude that the public policy in Louisiana of the sanctity of community property would be most seriously impaired should Louisiana Courts apply North Carolina law and not Louisiana law in interpreting the Agreement. Moreover, I further conclude that the boiler-plate language in the Agreement, especially in paragraphs 3 and 4, does not transfer any rights of Mrs. Robinson in the pension to Mr. Robinson.
Accordingly, I would affirm the trial court judgment insofar as it grants Leslie Leon Robinson, Jr., judgment on the promissory note but would reverse the trial court judgment insofar as it grants a Declaratory Judgment in favor of Leslie Leon Robinson, Jr. on the issue of the federal pension and would award interest on the loan by Mr. Robinson to the ex-Mrs. Robinson and would deny any other relief requested by either Leslie Leon Robinson, Jr., or June Coleman.
|10And, I would remand this matter to the District Court for hearing to determine the appropriate allocation in accordance with the formula set forth by the Supreme Court in the T.L. James case, supra, and would assess all costs to be taxed against the pension.

. This principle first appears in Art. 3515 of the Civil Code, which reads inter alia: "an issue in a case having contacts with other States is governed by the law of the State whose policies would be most seriously impaired if its law were not applied to that issue.”

. These provisions beginning with Article 3515 of the Civil Code are contained in Book IV which is entitled "Conflict of Laws” and was amended by the legislature to become effective January 1, 1992. Hence, these provisions would not apply to the parties of the case sub judice since the community was terminated in 1986 except that the legislature specifically provided: "this act shall become effective on January 1, 1992 and shall apply to all actions filed after that date.” Thus, since the petition of Mrs. Robinson to partition the pension benefits was not filed until subsequent to January 1, 1992, the provisions commencing with Article 3515, etc. are applicable in the analysis of this case.

. In determining how to apportion to the respective parties their interest in the pension, the Supreme Court stated: "In our original *74 opinion, we did not specifically set forth the method of determining what share of the funds was attributable to each of the communities with an ownership interest in them. As noted, the right to share acquired during the community (arising from each contribution made during the marriage) does not contractually vest until the employee's death, retirement, or withdrawal from employment. At that time, however, when under the plans a contractual right vests in the employee or his beneficiary or estate to receive proceeds from funds, the following method of apportionment to the respective communities and to the employee's separate estate is implicit in our original opinion: the value of each contribution paid into the fund shall be a share of the fund of the same proportion that the contribution’s amount bears to the total amount of all contributions paid into the fund to the employee’s account.” T.L. James, supra, page 852.