**In re MARRIAGE OF Eileen Buske ANDERSON and Wayne D. Anderson.**

**Upon the Petition of Eileen Buske Anderson, Petitioner–Appellant/Cross–Appellee,**

**And Concerning Wayne D. Anderson, Respondent–Appellee/Cross–Appellant.**

No. 92–1931.

Court of Appeals of Iowa.

Oct. 5, 1993.

Jeane W. Pearson of Price, Breen & Pearson, Fort Dodge, for appellant.

Monty L. Fisher, Fort Dodge, for appellee.

Considered by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

Petitioner-appellant/cross-appellee Eileen Buske Anderson appeals and respondent-appellee/cross-appellant Wayne D. Anderson cross-appeals from a decree dissolving their marriage. Eileen contends (1) the trial court punished her for her religious views, (2) the award of physical care to Wayne placed the importance of the children's contact with extended family over the importance of the children's contact with her, (3) her constitutional rights were jeopardized by certain procedures, (4) the trial court abused its discretion in awarding attorney fees to Wayne, (5) the property division was not equitable, (6) she should have been awarded alimony, (7) there is no evidence supporting certain of the trial court's findings, (8) the trial court should have let one of Eileen's witnesses render an opinion, and (9) certain letters should not have been admitted into evidence. Wayne on his cross-appeal asks the decree be affirmed in all respects but that he be given tax dependency exemptions. We affirm on both appeals.

Eileen, born in 1954, and Wayne, born in 1952, were married in 1975 and have three children born in 1980, 1982, and 1985. This was a first marriage of both of the parties. They both grew up in the Pocahontas–Webster County area and continued to live there after marriage. They both had supportive parents who have assisted them in a number of ways.

The trial court in the decree awarded the parties joint custody of the children and awarded Wayne physical care of the children. Eileen makes challenges to the physical care award contending, in making the award, the trial court punished her for her religion, gave too much emphasis to the children spending time with their extended families, did not consider the children's wishes, considered evidence it should not have considered and excluded evidence it should have considered, and employed procedures that denied her due process.

Eileen and Wayne are both fine people. They are both educated, articulate, responsible, and truly concerned about their children's well being and their future. Wayne holds a degree in business and sociology from Buena Vista College and Eileen has an A.A. degree from Iowa Central Community College in community service, a degree in social work from the University of Nebraska at Lincoln, and a Master's degree in social work from the University of Nebraska at Omaha. The parties have both, during various times of the children's lives, been the primary caretaker of the children. Either party would make an excellent physical custodian. The question is whether we agree with the trial court that the evidence shows Wayne is the better custodian.

In assessing this issue, we need to look first at certain challenges Eileen makes to the trial court's findings. Eileen contends the trial court gave improper consideration to her religious beliefs in arriving at its decision. We have read the trial court's findings and do not agree with Eileen that the trial court concluded Eileen's religious beliefs and practices were a factor that prevented her from receiving physical care. However; even if the trial court did consider Eileen's religious beliefs as a factor weighing against Eileen's being awarded physical care of the children, we, on our de novo review, do not. We agree with Eileen that she has the constitutional right to practice the religion of her choosing. *See Loney v. Scurr*, 474 F.Supp. 1186, 1196 (S.D.Iowa 1979). And it would be unconstitutional for us to put any restraint on the exercise of her religious freedom. We do not favor one religion over another in a custody determination. *See In re Marriage of Rodgers*, 470 N.W.2d 43, 45 (Iowa App.1991); *see also Gould v. Gould*, 116 Wis.2d 493, 342 N.W.2d 426, 432–33 (1984). On our de novo review of the record, we find nothing about Eileen's religious practice that threatens the physical or mental health of the children. Eileen, in her religion, subscribes to values such as honesty, kindness, and responsibility to family. We consider these values to her credit in assessing the custody issue. *See McNamara v. McNamara*, 181 N.W.2d 206, 209–10 (Iowa 1970). In *McNamara* 181 N.W.2d at 209, the court, in awarding child custody to a father, considered the moral environment where the child would be raised and the fact the father, who conscientiously adhered to religious teaching, presented a more desirable environment than the mother.

This was a lengthy trial. A number of witnesses for both sides on the custody issue testified and rendered their respective opinions. We have read that testimony carefully. To set it forth in this opinion would serve no useful purpose. The evidence reveals both Eileen and Wayne are responsible and caring individuals. We reiterate that either party would be an excellent custodial parent and the children's best interests would be served by awarding physical care to either parent.

The children wrote letters to the judge expressing a desire to live with their mother. Eileen contends the preferences of the children, as shown in letters, should have been given greater weight. A child's preference is not controlling. In deciding how much weight to give the preference, the following factors should be considered:

1. The children's respective ages and education levels;

2. The strength of their preference;

3. Their intellectual and emotional make-up;

4. Their relationship with family members; and

5. Their reasons they give for their preference.

*In re Marriage of Behn*, 416 N.W.2d 100, 102 (Iowa App.1987); *In re Marriage of Eller-*

*broek,* 377 N.W.2d 257, 258–59 (Iowa App. 1985).

The trial court found the children susceptible to subtle persuasion and Eileen in a subtle way brought the children to the conclusion they want to live with their mother. The court also was not convinced the children would have known to write to the court of their preference without their mother's help.

■ In reviewing the evidence we, of course, give deference to the trial court's assessments of the credibility of the witnesses. *See* Iowa R.App.P. 14(f)(7). The trial court had the opportunity to have the parties and their witnesses before it. *In re Marriage of Brown,* 487 N.W.2d 331, 332 (Iowa 1992). We find no reason to disagree with the trial court's assessment on this issue.

Eileen has made several specific complaints about evidentiary issues that run to child custody. Eileen contends the trial court improperly considered letters written to Eileen by a friend and failed to allow a domestic abuse worker to render an opinion.

■ A dissolution action is tried in equity and reviewed de novo on appeal. *In re Marriage of Whelchel,* 476 N.W.2d 104, 106 (Iowa App.1991). The trial court should have received objections to evidence but not ruled on the objections and allowed the evidence in the record. That way we would have the evidence and could make our own determination as to its admissibility. The trial court ruled on some objections. Neither party objected to this procedure, so we consider the record as made at the trial court level.

■ Eileen contends the trial court should have sustained her hearsay objection to five letters written to her by a friend, Linda Reiners. Wayne introduced the letters in evidence and they were admitted. We have examined the letters. They are handwritten letters of very questionable legibility. Because they are nearly impossible to read, we have not considered the letters in our de novo review. We, therefore, do not address Eileen's challenge to the admission of the exhibits.

■ Eileen challenges the trial court ruling that there was insufficient foundation laid for a domestic abuse worker to give an opinion as to whether Eileen was a victim of domestic abuse. This matter was in equity and our review is de novo, therefore, the trial court should not have ruled on the objection, but should have allowed the witness to answer. However; Eileen made no offer of proof. She failed to preserve this issue for appellate review.

■ There also is ample evidence in the record for this court to consider Eileen's claim she was a victim of domestic abuse. There is substantial evidence from a number of persons who had frequent contact with the parties and their children during the marriage. A domestic abuse worker testified Eileen had given a history of Wayne once having squeezed Eileen's hand very hard and once having driven with Eileen very fast in a car. Eileen also gave a history of Wayne's concern with finances and of his yelling at and spanking the children. This behavior is controlling and manipulative. However; there also is evidence from a number of witnesses of Eileen engaging in manipulative behavior both herself and with the children. This was not a perfect marriage. Both parties have exhibited dissent and frustration. No marriage is perfect. Wayne and Eileen are both decent people. We will not label either partner to this marriage a domestic abuser.

After reviewing the evidence, we find no reason to depart from the trial court's decision. The turning evidence is testimony of witnesses who have had the longest and most intimate contacts with both Eileen and Wayne as people and as parents. These witnesses are of the opinion Wayne is the better custodian. Testimony in support of Wayne being the custodial parent came from Eileen's parents and her three siblings as well as from Wayne's siblings. Eileen's parents have during the marriage been supportive of and generous to both Eileen and Wayne. They have also had substantial involvement with the children.

Testimony in Eileen's favor came from two workers at a Domestic Abuse Center where Eileen lived with the children for about forty-

**143**

two days. This testimony clearly supports Eileen's claim that she is an excellent parent. The domestic abuse workers, unlike most of the witnesses who testified in Wayne's behalf, did not know both Wayne and Eileen. The domestic abuse workers had no independent knowledge of Wayne's abilities as a parent and relied on history Eileen gave them.

Eileen's next contention is she was denied due process of the law because the trial court before trial enjoined her from use of property and failed to hear a motion for rule to show cause. Eileen makes no request for relief in this section of the brief.

The issues of Eileen's use of her separate property and of the motion for rule to show cause claiming she was denied maximum contact with the children have been decided or became moot issues when the dissolution decree was filed. Eileen requests no relief on either of these issues and we find no compelling reason to address them. *See Rodine v. Zoning Bd. of Adjustment,* 434 N.W.2d 124, 125 (Iowa App.1988).

Eileen also contends the trial court bifurcated the trial on all issues, including child custody by dividing the trial in two parts during the week of May 12, 1992, and in early July. There were four days of testimony in May and six in July.

Eileen contends the trial court ignored the testimony of her witnesses presented during the May portion of the trial in the final decree. We disagree with Eileen that the trial was bifurcated. A bifurcated trial is one where the issues are tried separately. *See* Black's Law Dictionary 148 (5th ed. 1979). Rather, this was a trial with a very long recess. It is unfortunate the entire case was not tried without the two-month recess. We understand the problems in scheduling trials, particularly trials as lengthy as this one. Eileen did not object to the long recess at the trial court level and, as Wayne points out, Eileen did not file a 179(b) motion asking the trial court to rule on this issue. We are uncertain of the reason for the long recess. We review de novo and have a transcript of all segments of the trial. Our review on appeal is no different than if

the trial had been tried on days in sequence. We, therefore, need not either address this issue or decide if it were preserved for appellate review.

The next issue is whether Eileen received an equitable property settlement. Eileen contends she did not. The partners in the marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Russell,* 473 N.W.2d 244, 246 (Iowa App. 1991). Iowa courts do not require an equal division or percentage distribution. *Id.* at 246. The determining factor is what is fair and equitable in each circumstance. *Id.* The distribution of the property should be made in consideration of the criteria codified in Iowa Code section 598.21(1) (1991). *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983).

Eileen's parents gave her substantial gifts. Part of which was stock in closely held family corporations and other liquid assets. In Eileen's financial statement, she showed the property to have a value of about $70,000; however, in arriving at that amount, she did not value a number of shares of stock in four corporations. Wayne placed values on the shares of stock and claimed Eileen's gifted property totaled about $135,000. The trial court found the gifted property to have a current value of approximately $135,000. We agree with this valuation.

The couple had accumulated an equity in a house in Fonda, Iowa, vehicles, life insurance, and antiques. Wayne has a pension plan. Wayne made some claim to the money that came from Eileen's parents, but the trial court found the gifts were made only to Eileen and not to either her husband or her children.

The court awarded the equity in the family home and the retirement account to Wayne. The equity in the home and the retirement account were valued at about $38,000. The trial court set aside to Eileen the $135,000 of her gifted property and charged Eileen with debts of $8000 as well as one-half of a nine thousand dollar attorney fee for the children's attorney. Other items had little value except antique furniture which Wayne valued

at $5000 and Eileen valued at $15,000. A majority of the furniture went to Wayne.

Wayne contends the division left Eileen with $124,000 in value and him with $45,000. Eileen contends she was left with less property, but in all values used in her argument, she has failed to place any value on the stock she owns in four corporations.

Eileen contends she should have been awarded alimony.

We look at the issue of awarding alimony from a gender-neutral position. *In re Marriage of Bethke*, 484 N.W.2d 604, 608 (Iowa App.1992). Eileen leaves the marriage with a greater net worth than Wayne. While it is gifted property, the available inherited or gifted property is considered on the issue of alimony. *See In re Marriage of Voss*, 396 N.W.2d 801, 804 (Iowa App.1986). Eileen's tax returns have shown earnings from her property of about $14,000 annually. Eileen has a M.A.; Wayne has a B.A. While Wayne has greater earnings, he also has primary responsibility for three children. We have considered all the economic provisions of a decree together in assessing their individual sufficiency. *Whelchel*, 476 N.W.2d at 110. We affirm on this issue.

Eileen next contends she should not have been ordered to pay $6500 of Wayne's $8500 attorney's fee. Iowa trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App.1983). To overturn an award the complaining party must show that the trial court abused its discretion. *Id.* Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson*, 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *In re Marriage of Lattig*, 318 N.W.2d 811, 817 (Iowa App. 1982). An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal.

*In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App.1981). Iowa trial courts are permitted considerable discretion in allowing attorney's fees and costs in dissolution actions. *In re Marriage of Moorhead*, 224 N.W.2d 242, 245 (Iowa 1974). Eileen leaves the marriage with substantially more property than Wayne. She has the ability to pay the attorney fee from current assets. We do not find the trial court abused its discretion in ordering Eileen to pay a portion of Wayne's attorney fees.

Wayne, on cross-appeal, contends the trial court should not have granted Eileen all three income tax dependency exemptions. Eileen was ordered to pay child support of $432.25 per month. The support was to be decreased according to the guidelines as the children graduated from high school or became emancipated. Wayne contends in determining net monthly income for child support purposes his income tax liability was figured using three children as dependents and Eileen's was figured using only herself as a dependent. He contends, therefore, the tax figures used to compute child support are not correct and give an unfair advantage to Eileen. Dependency deductions are part of the child support determination. *In re Marriage of Habben*, 260 N.W.2d 401, 403 (Iowa 1977). Federal and state income tax deductions can substantially change a parent's ultimate income tax liability resulting in a larger or smaller net monthly income. *See In re Marriage of Miller*, 475 N.W.2d 675, 679 (Iowa App.1991). Wayne challenged the allocation of the dependency exemptions in a rule 179(b) motion. However; in that motion, he only contended the allocation of the exemptions was not fair. He did not raise the issue he now raises that the respective net incomes of the parties for child support purposes were figured using three exemptions for him and one for Eileen. We will not consider this issue for the first time on appeal. We affirm on this issue.

**AFFIRMED.**

HAYDEN, J., concurs.

OXBERGER, C.J., dissents.

OXBERGER, Chief Judge (dissenting).

I respectfully dissent. The trial court stated its reasons for awarding Wayne custody of the children were:

Something occurred in Texas to cause Eileen's transformation. She acquired a religious zeal that did not exist before. She went from one church or church group to another. She spent a considerable amount of time with her Bible. The exhibits dealing with the religious material provide one with the flavor of her activities. Eileen would cloister herself in her room at home to read her Bible. She did not participate in the family functions. As a result of Eileen's new religious interest she spent less time with her children. Wayne took over with the children. He continues to take the children to sports activities and addresses their physical, emotional, and educational needs. Plus their nurturing needs. The Buske (Eileen's parents and siblings) family is rather close knit. . . .

The children have relatives their own age, their aunts, and uncles, and an opportunity to participate in all the family gatherings. This would not be the case if Eileen were to have their custody. In response to a question by counsel dealing with visitation with the grandparents, she indicated something to the effect that she'd have to think about that. Then later, she said they would have the visitation as always. The long-range best interest of the children will be promoted with their primary custody being given to their father, Wayne.

During most of this seventeen-year marriage Eileen was a stay-at-home mother who provided the bulk of parental support to the parties' three children, ages eleven, nine and six.

Two years ago Eileen became active in a fundamental religion. She became critical of her parents and siblings. They supported Wayne against Eileen. Wayne was a key person in Eileen's family business.

I believe the record is clear but for Eileen's new found religion there may not have been a dissolution action.

In *Osier v. Osier*, 410 A.2d 1027 (Me.1980), the Maine Supreme Court adopted a two-step analysis when the welfare of children may be threatened by a religious practice of a parent in a divorce action. The court was concerned with a violation of the First Amendment's religious freedom right. *Id.* at 1029.

First, a trial court should make a preliminary determination of which parent would be the better custodian, independently of any consideration of [either parent's] religious practices. *Id.* If the parent without a special religious consideration prevails on that preliminary inquiry, the entire matter is settled. *Id.* If, however, the court initially concludes that the child's welfare is best served by awarding custody to the parent with a special religious consideration, any subsequent inquiry into the consequences upon the child of [that parent's] religious practices must proceed along a two-stage analysis designed to protect those rights against unwarranted infringement. *Id.* at 1030. The analysis proceeds as follows: (1) a threshold factual determination that the child's "temporal well-being is immediately and substantially endangered by the religious practice in question"; and (2) that the custody order it makes, after a balanced consideration of the conflicting interests involved, "makes the least possible infringement upon the parent's liberty interest consistent with the child's well-being." *Id.*

I would adopt the Maine two-step procedure for future cases where there is to be testimony that a parent's religious practices threaten the well being of children in a custody dispute. In this case I would award physical care of the parties' children to Eileen.

The trial court awarded the parties' home to Wayne, as well as his retirement account. Eileen was required to pay $7,873.91, of debts much of which was incurred by Wayne after the parties separated. Eileen was required to pay $6500 of Wayne's attorney fees. The trial court said:

The court by division of property and debts has made an equitable division taking into consideration the inheritance and

gifts. It would be unjust not to consider Eileen's gifts in making distribution. The Court has done so in awarding the home and Wayne's retirement account to him and leaving Eileen her gifts.

I would set off Eileen's gifts and inheritance to her and then divide the marital assets equally to the parties. I would require Wayne to pay his own bills and attorney fees.