# IN THE COURT OF APPEALS OF IOWA

No. 19-0092
Filed January 9, 2020

IN RE THE MARRIAGE OF BRIAN L. FREIBERG
AND AMANDA J. FREIBERG

Upon the Petition of
BRIAN L. FREIBERG,
      Petitioner-Appellant/Cross-Appellee,

And Concerning
AMANDA J. FREIBERG,
      Respondent-Appellee/Cross-Appellant.
_____

      Appeal from the Iowa District Court for Marshall County, John J. Haney, Judge.


      Brian Freiberg appeals, and Amanda Freiberg cross-appeals, the district court's denial of their respective requests to modify their dissolution decree. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**


      Eric Borseth of Borseth Law Office, Altoona, for appellant.

      Barry S. Kaplan and C. Aron Vaughn of Kaplan & Frese, LLP, Marshalltown, for appellee.


      Heard by Vaitheswaran, P.J., Mullins, J., and Potterfield, S.J.*

      *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VAITHESWARAN, Presiding Judge.**

Brian and Amanda Freiberg divorced in 2016. The district court granted the parents joint legal custody of their two children, assigned physical care to Amanda, and prescribed a visitation schedule for Brian in the event the parents were "unable to agree." The court later enlarged the visitation portion of the decree. This court affirmed the decree. *See In re Marriage of Freiberg*, No. 16-1135, 2016 WL 7394886, at *1–2 (Iowa Ct. App. Dec. 21, 2016).

The following year, Amanda filed a petition to modify the dissolution decree. She requested sole legal custody of the children. Brian counterclaimed for physical care or, "in the alternative[,] . . . a specific liberal schedule of visitation" and a concomitant adjustment of child support. Brian also filed several contempt applications based on assertions that Amanda denied him visitation. The district court set the matters for a consolidated hearing.

Following the hearing, the district court denied Amanda's request for sole legal custody and Brian's request for physical care, found Amanda in contempt for failing to allow midweek visitation during the school year but declined to punish her for the contempt, modified the visitation schedule and a no-contact order, and refused to order either parent to pay the other's attorney fees. Brian appealed, and Amanda cross-appealed.

Brian challenges the district court's refusal to (1) impose punishment for contempt; (2) adopt his proposed visitation schedule; (3) transfer physical care of the children to him; and (4) cite evidence "that occurred after the dissolution trial but before the ruling and decree was entered." Amanda challenges the district court's (1) refusal to grant her sole legal custody of the children and (2) finding of

contempt. We will begin with Amanda's cross-appeal and proceed to the issues raised by Brian.

## I. Denial of Sole Legal Custody

"Joint legal custody" affords "both parents . . . legal custodial rights and responsibilities toward the child" and gives "neither parent . . . legal custodial rights superior to those of the other parent." Iowa Code § 598.1(3) (2017). If a court refuses to grant parents joint legal custody, the court "shall cite clear and convincing evidence . . . that joint custody is unreasonable and not in the best interest of the child to the extent that the legal custodial relationship between the child and a parent should be severed." *Id*. § 598.41(2)(b). It follows that joint legal custody is the preferred legal custodial arrangement. *See In re Marriage of Bartlett*, 427 N.W.2d 876, 878 (Iowa Ct. App. 1988).

The district court retained joint legal custody after finding that both parents were actively involved in the children's lives. Amanda argues the "continued discord" between the parents warrants a change to sole legal custody. *See In re Marriage of Rolek*, 555 N.W.2d 675, 677 (Iowa 1996).

The record is replete with examples of discord. But discord was nothing new. The decretal court referenced Amanda's "bitterness and distrust of Brian" and stated that her attitude "hinder[ed] effective communication." This court similarly stated, "Amanda and Brian have demonstrated an inability to communicate effectively." *Freiburg*, 2016 WL 7394886, at *2. Because the relationship was marked by conflict from the time of the dissolution proceeding, Amanda failed to establish that the tension amounted to a substantial change of circumstances not contemplated at the time of the decree. *See In re Marriage of*

*Harris*, 877 N.W.2d 434, 440 (Iowa 2016) ("A party seeking modification of a dissolution decree must prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered.").

Anticipating this conclusion, Amanda asserts a "substantial and material change in circumstances in this case is shown not simply by the continued discord . . . but by the *realization* due to the continued discord that the communication . . . will not improve." We acknowledge perceived communication difficulties that later become intractable may serve as a basis for modification. *See Rolek*, 555 N.W.2d at 677 ("At the time of the 1986 decree, the district court was apparently hopeful that the parties were capable of cooperating in those matters affecting the best interests of their children. It is now quite clear that this is not the case."); *In re Marriage of Bolin*, 336 N.W.2d 441, 446 (Iowa 1983) ("When one parent's obduracy makes joint custody unworkable, the trial court in a modification proceeding may find the child's best interests require sole custody in the other parent."). But Amanda is hard-pressed to argue she is the parent who should benefit from the intractability. She admitted to being charged with "a domestic assault," which was later amended to "[s]imple assault."[1] Although she completed

---

[1] The evidence is drawn from Amanda's testimony on direct examination. We do not rely on Amanda's criminal record, which the district court stated was expunged. *See* Iowa Code §§ 907.9(4)(b) (authorizing expungement of deferred judgments), 907.1(3) (defining expungement as segregation of criminal record "in a secure area or database which is exempted from public access"); *cf. In re Marriage of Hamoda*, No. 07-1690, 2008 WL 3363834, at *3 n.1 (Iowa Ct. App. Aug. 13, 2008) ("At trial, Gada's attorney asked the court to take judicial notice [of] the criminal court file involving this [assault] incident. The court denied the request after Saadildin's attorney informed the court that following the entry of a deferred judgment, the record had been expunged. Gada now claims on appeal the court erred in refusing this request. However, even without the criminal file the record contains sufficient

the requirements for obtaining a deferred judgment, her conduct precipitated the imposition of an order prohibiting contact with Brian—an order that, according to the district court, was used by both parties "as a sword and a shield." Under these circumstances, the district court appropriately denied Amanda's request for sole legal custody.

## II.   Contempt Finding

Iowa Code section 598.23 states, "If a person against whom a . . . final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt. . . ." Willfulness is "conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 140 (Iowa 1988) (citation omitted). Our review of the district court's finding of willfulness is for substantial evidence. *Id.*

Amanda asserts she did not willfully deny Brian visitation. Her own testimony belies the assertion.

Brian was entitled to midweek visitation during the school year on Tuesday evenings from 6:00 p.m. to 8:00 p.m. Many of the children's extracurricular activities took place on Tuesday evenings. Amanda counted Brian's attendance at those activities as visitation time. When Brian asked to change the visitation

---

evidence regarding the facts of this incident as well as Saadildin's admission of his guilty plea. We therefore need not address whether the district court erred in refusing to take judicial notice of the criminal file."); *In re Marriage of Karagi*, No. 05-0342, 2006 WL 929228, at *1 (Iowa Ct. App. Apr. 12, 2006) (noting the absence of evidence in the record as to whether a deferred judgment "was completed and expunged").

time to Thursday evenings instead of Tuesday evenings, Amanda refused. Indeed, she conceded that "every time" Brian gave her "a notice of a midweek visitation other than a Tuesday," she "denied it." Although Amanda argues the terms of the decree were indefinite, the district court found otherwise and found her conduct was "intentional, purposeful, and in disregard of Brian's rights." Substantial evidence supports the findings.

## III.   Contempt Punishment

The district court "decline[d] to impose punishment" for Amanda's contempt but elected to "modify visitation" as follows:

> a. Midweek visitation shall be modified to provide that Brian shall have the children every Thursday evening from after school until 8:00 p.m. Brian shall be responsible to pick the children up from school and drop them off at Amanda's driveway at 8:00 p.m. If there is no school on Thursday, Brian shall pick the children up from Amanda's driveway at 3:30 p.m. and drop them off at Amanda's driveway at 8:00 p.m. accordingly.
> b. Brian's alternate weekend visitation shall be modified in that said visitation shall begin after school on Fridays during the school year. Brian shall be responsible to pick the children up from school. Amanda shall pick the children up from Brian's driveway on Reycliff at 6:00 p.m. on Sunday evenings.
> c. Summer visitation exchange, unless otherwise agreed, shall require Brian to pick the children up from Amanda's driveway at the start of his parenting time and Amanda to pick the children up from Brian's driveway on Reycliff drive at the start of her parenting time.
> d. The provision in the decree as amended and enlarged that provides that "the party who does not have the children shall be allowed reasonable phone contact with the children on a daily basis by phone, text, Skype or other electronic means" is suspended for so long as the no contact order remains in effect between the parties.

On appeal, Brian contends the district court should have modified the decree to a greater extent and should have awarded attorney fees and costs in connection with the contempt action. Our review is for an abuse of discretion. *See*

*Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007) ("A contemner's sentence is reviewed for an abuse of discretion.").

We discern no abuse. Iowa Code section 598.23 provides alternatives to a jail sentence upon a finding of contempt, including modification of visitation. *See* Iowa Code § 598.23(2)(b). The court's modification directly addressed Amanda's denial of midweek visitation. Additionally, the district court was not obligated to award attorney fees in connection with the finding of contempt. *See id.* § 598.24 (stating "the costs of the proceeding, including reasonable attorney's fees, *may* be taxed against that party" (emphasis added)). We affirm the district court's resolution of the contempt application.

## IV. *Further Modification of Visitation*

Independently of the contempt application, Brian argues the visitation schedule, as modified, remains "limited and restrictive." He contends the district court should have adopted the schedule proposed in his request for relief.

In response to questioning by the court during oral arguments, Amanda's attorney conceded Brian's proposed visitation schedule was agreeable to Amanda. Based on that concession, we reverse the visitation portion of the modification decree and remand for substitution of Brian's proposed visitation schedule set forth in his request for relief filed on October 9, 2018, which provides the following:

> i. Summer break: Alternating weeks beginning the day school excuses for the summer at 9:00 a.m. and ending the day school resumes at 9:00 a.m. The parties will exchange the children Friday at 9:00 a.m.
>> a. The midweek visits during the summer are vacated. There shall be no midweek visits during the summer break from school.

ii. School Year:
a. Weekends: Alternating weekends beginning Friday at 9:00 a.m. and ending Monday at 9:00 a.m. If there is no school on Monday then visitation will continue until Tuesday at 9:00 a.m.
b. Midweek Visit: Every Thursday at 9:00 a.m. and ending Friday at 9:00 a.m.

We further remand for recalculation of child support in light of the substitution.

## V.  Modification of Physical Care

Brian argues the district court should have modified the physical care provision of the dissolution decree to afford him physical care. The district court concluded Brian failed to satisfy his "heavy burden" of establishing the necessity of a change in physical care. The court stated, "Sadly, the same communication problems and power struggles that were occurring during the demise of their marriage and upon entry of the decree continue today." On our de novo review, we agree with the court's assessment. We conclude Brian failed to establish a substantial and material change of circumstances not contemplated at the time of the decree. *See Harris*, 877 N.W.2d at 440. We affirm the denial of the Brian's request for modification of the physical care portion of the decree.

## VI.  Consideration of Post-Trial, Pre-Decree Evidence

Brian contends the district court should have considered "evidence that occurred after the dissolution trial but before the ruling and decree was entered." In fact, the district court admitted the proffered post-trial evidence subject to an objection, as our appellate courts have instructed courts to do in equity cases. *See Wilker v. Wilker*, 630 N.W.2d 590, 597 (Iowa 2001) ("As this was a trial in equity, the court did not need to rule on objections, but could hear all evidence subject to objections."); *In re Marriage of Anderson*, 509 N.W.2d 138, 142 (Iowa Ct. App.

1993) (stating trial court in dissolution action should receive objections to evidence but not rule on the objections and allow the evidence in the record). The fact that the court makes no mention of the evidence does not mean the court failed to consider it. *Cf. Myers v. F.C.A. Servs., Inc.*, 592 N.W.2d 354, 356 (Iowa 1999) ("Nor, when the agency specifically refers to some of the evidence, should the losing party be able, ipso facto, to urge successfully that the agency did not weigh all the other evidence."). We conclude the district court acted equitably in its handling of the evidence.

## VII. *Appellate Attorney Fees*

Brian and Amanda seek awards of appellate attorney fees. An award rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Both parties have the financial ability to pay her own attorney fees. Accordingly, we decline their requests.

## VIII. *Disposition*

We affirm on the issues raised in Amanda's cross-appeal. On Brian's appeal, we affirm all aspects of the modification decree except the visitation portion of the decree. We reverse and remand for substitution of Brian's requested visitation provision, as set forth in this opinion and his October 9, 2018 request for relief, and for reconsideration of child support in light of the change. Costs of the appeal are taxed to Amanda.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**