# IN THE COURT OF APPEALS OF IOWA

No. 19-1569
Filed November 30, 2020

IN RE THE MARRIAGE OF JOSEPH EDWARD GIFFORD SR
AND LEIA LYNN GIFFORD

Upon the Petition of
JOSEPH EDWARD GIFFORD SR,
     Petitioner-Appellant/Cross-Appellee,

And Concerning
LEIA LYNN GIFFORD,
     Respondent-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Jason D. Besler, Judge.

Joseph Gifford appeals and Leia Gifford cross-appeals the provisions of the decree dissolving their marriage. **AFFIRMED ON BOTH APPEALS.**

David M. Cox of Bray & Klockau, P.L.C., Iowa City, for appellant.

Mark D. Fisher and Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for appellee.

Considered by Doyle, P.J., Mullins, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**DOYLE, Presiding Judge.**

Joseph Gifford (Joe) appeals and Leia Gifford cross-appeals from the provisions of the decree dissolving their fifteen-year marriage. The parties challenge various provisions of the decree concerning child custody and visitation of their three children, as well as property division and spousal support. Because dissolution actions are tried in equity, we review their claims de novo. *See In re Marriage of Anderson*, 509 N.W.2d 138, 142 (Iowa Ct. App. 1993).

**I. Partial Stipulation.**

We first address Leia's claim that the district court committed reversible error by considering a partial stipulation of settlement the parties signed on December 14, 2017, which addressed all matters except child support. When the parties signed the stipulation, Joe had legal counsel but Leia did not. Leia emailed Joe's attorney[1] on December 19 requesting a discussion for changing the agreement, but Joe filed a copy of the stipulation when he petitioned to dissolve the marriage the next day. Leia resisted entry of the partial stipulation, and the court declined to approve or enforce it.

When the matter came to trial, Joe offered the partial stipulation into evidence, and Leia objected. The court noted that the partial stipulation was already part of the court file and admitted it into evidence, stating it would decide how much weight to give it. On appeal, Leia contends the court committed reversible error by admitting and considering the partial stipulation.

---

[1] That attorney withdrew from representing Joe in February 2018, and another attorney represented him throughout the proceedings.

A court sitting in equity may not exclude evidence but hears all evidence subject to objection. *See id.*; *United Props., Inc. v. Walsmith*, 312 N.W.2d 66, 73-74 (Iowa Ct. App. 1981). This practice affords us a complete record on appeal, where we may rule on the merits after deciding the admissibility of the evidence. *See Anderson*, 509 N.W.2d at 142; *United Props.*, 312 N.W.2d at 74. If the district court considers improper evidence, reversal is not required because we may disregard that evidence in our de novo review. *See In re Marriage of Williams*, 303 N.W.2d 160, 163 (Iowa 1981).

Without deciding the question of admissibility, we find the partial stipulation does not aid in our resolution of the issues. We exclude it from our review.

**II. Child Custody and Visitation.**

The district court granted joint legal custody of the parties' three children. When a court grants joint legal custody of a child, it may award joint physical care if either parent requests it. *See* Iowa Code § 598.41(5)(a) (2017). In determining whether joint physical care is appropriate, we consider "(1) stability, continuity of caregiving, and approximation; (2) 'the ability of the spouses to communicate and show mutual respect'; (3) 'the degree of conflict between parents'; and (4) 'the degree to which the parents are in general agreement about their approach to daily matters.'" *In re Marriage of Hansen*, 886 N.W.2d 868, 874 (Iowa Ct. App. 2016) (citation omitted).

Leia requested joint physical care, but the court determined it was not in the children's best interests. The court observed that Joe and Leia employ different parenting styles and have opposing views as to how well the temporary joint-physical-care arrangement worked while the dissolution was pending. It also found

that the parties' issues with communication, respect, and trust will prevent a joint-physical-care arrangement from working permanently.

"When joint physical care is not warranted, the court must choose one parent to be the primary caretaker, awarding the other parent visitation rights." *In re Marriage of Hynick*, 727 N.W.2d 575, 577 (Iowa 2007). The court ultimately determined that granting Joe physical care is in the children's best interests. Although much of the witness testimony did not help the court in determining physical care, it made particular note of the testimony of a witness who had lived with Leia for a long time. That witness admitted he was not "an overly protective parent" and believed in allowing children some freedom, but he believed Leia took that philosophy "to an extreme." The court found this witness's testimony was in keeping with other evidence of Leia's lax attitude, which had placed the children's physical health at risk. Although Joe has faults, the court determined he "is doing a better job watching, protecting, and providing for the minor children" and "is prepared, ready, and able to make the sort of day-to-day decisions required of the [parent] who has primary physical care."

When the court grants physical care to one parent, it should provide liberal visitation to the other parent to "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents." Iowa Code § 598.41(1)(a). The visitation schedule must serve the best interests of the children. *In re Marriage of Gensley*, 777 N.W.2d 705, 718 (Iowa Ct. App. 2009). Noting the amount of Leia's involvement in the children's lives, the court granted her extraordinary visitation, with Leia receiving only one less overnight visitation than she had under the court's temporary order for joint physical care. The court

also determined Leia is entitled to another day of visitation when school is out or the children are sick following a weekend visitation.

Leia challenges the decision to grant Joe physical care of the children and seeks joint physical care or, in the alternative, asks us to grant her physical care. She complains that the district court failed to provide continuity in the children's care because it deviated from the joint-physical-care arrangement that was in place in the thirteen months before trial and disregarded her historical role as primary caretaker. She notes that the court found the parties could communicate sufficiently for joint legal custody and granted her extraordinary visitation, which she believes contradicts the court's reason for denying joint physical care. She also claims she is better suited to protect the noncustodial parent's relationship with the children.

For his part, Joe seeks to have Leia's visitation reduced to alternating weekends and holidays. To support his argument for less visitation, he cites the same issues with instability, lack of supervision, and communication that led the court to conclude Leia was the less suitable caretaker. He also complains about the provision granting Leia an extra day of visitation when the children are not in school, arguing it grants Leia unilateral discretion to keep the children for another day if she believes the children are sick.

In addressing the parties' claims, we begin by noting that although our review is de novo, the district court observed the witnesses at trial and is in a better position to determine their interests, as well as "their motive, candor, bias, and prejudice." *See Albert v. Conger*, 886 N.W.2d 877, 880 (Iowa Ct. App. 2016). For

this reason, we give weight to the trial court's findings regarding conflicting testimony and defer to its credibility determinations. *See id.* We do so here.

We agree that Joe should be granted physical care of the children. Although continuity of care is one factor to consider in determining physical care, the court is not required to place a child with the parent who has acted as primary caretaker before the parties' separation. *See In re Marriage of Knight*, 507 N.W.2d 728, 730 (Iowa Ct. App. 1993). We also find no contradiction between granting the parties joint legal custody and placing the children in Joe's physical care with Leia receiving extraordinary visitation. Legal custody provides "the ability to participate in fundamental decisions about the child's life, whereas physical care encompasses the right to determine a myriad of details associated with routine living." *See In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). Because joint physical care affords greater involvement in day-to-day decision-making, it also requires greater communication and cooperation between the parents. *See Hynick*, 727 N.W.2d at 579 ("[J]oint physical care also envisions shared decision making on all routine matters. Obviously, such decision making requires good communication between the parents as well as mutual respect."). "[T]he main distinction between joint physical care and primary physical care with liberal visitation rights is the joint decision making on routine matters required when parents share physical care." *Id.* at 580. By granting physical care to Joe with extraordinary visitation to Leia, the court sought to balance these parents' ability to communicate and cooperate, safety concerns, and the need to maximize the children's contact with both parents. On the record before us, we concur with its conclusion.

**III. Marital Home.**

The district court awarded the marital home to Leia, noting that she had lived in the home for over two years and "has worked hard on the house and made it her home." The court found it would be equitable to allow Leia to remain in the home if she takes over the mortgage, and gave her ninety days to do so. If Leia fails to refinance the home and remove Joe from the mortgage within that time frame, the court ordered the parties to sell the home with Leia receiving the first $16,360.33 of net proceeds and any remaining proceeds would be divided equally.

On appeal, Joe argues Leia should have to move out of the marital home while it awaits sale because she has not maintained the property, makes late mortgage payments, and has no incentive to ready the home for sale. Because the court awarded the property to Leia, we disagree. If the house sale provision is triggered and Leia violates the decree's provisions on sale of the home, Joe has other remedies available.

**IV. Spousal Support.**

We next consider Leia's request for spousal support. Such an award is not an absolute right but depends on the circumstances of each case. *See In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa Ct. App. 1993). In deciding whether to award spousal support, the court looks at each party's earning capacity and balances one spouse's needs against the other spouse's ability to pay. *See id.* It also considers the length of the marriage, each party's age and health, the distribution of property, each party's education, and the feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage. *See* Iowa Code § 598.21A(1).

We accord the trial court considerable latitude in determining whether to award spousal support. *See In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015).

Leia seeks a spousal-support award, noting that she was economically dependent on Joe during their marriage and earns much less than he does. But the district court noted that Leia has been in a new relationship since 2017 and living with her boyfriend since February 2018. They have a child together, and Leia claims his children as her stepchildren. Leia and her boyfriend also share a bank account where they commingle their funds. The court considered Leia's complete financial picture, including her new relationship and the property division, in determining spousal support was not appropriate.

We affirm the denial of spousal support. Although cohabitation is not a ground for automatic denial or limitation of spousal support, the court may consider it when it affects a party's financial status and need for support. *See In re Marriage of Orgren*, 375 N.W.2d 710, 712 (Iowa Ct. App. 1985); *see also In re Marriage of Ales*, 592 N.W.2d 698, 703 (Iowa Ct. App. 1999) (stating that "cohabitation can affect the recipient spouse's need for spousal support and is therefore a factor to consider" in an action to modify). In considering the totality of Leia's financial status, she has not shown a need for support.

## V. Dissipation of Property.

Leia seeks compensation for Joe's alleged dissipation of funds from the sale of a home in California, which totaled $208,531.43. That amount was deposited into the parties' joint bank account in April 2017. The parties used money from the sale to pay off joint debts. Three weeks after the deposit, Joe withdrew $153,000. Leia asks for an award of one-half of the $153,000.

The court may consider the improper disposition or waste of marital property before dissolution in determining an equitable property division. *See In re Marriage of Kimbro*, 826 N.W.2d 696, 700-01 (Iowa 2013). Spending on legitimate household expenses is not considered dissipation. *See id.* at 701.

The district court found insufficient evidence to show "either party spent or used the money in any manner that was inconsistent with reasonable behavior." At the time of trial, $83,696.68 of the $153,000 remained in one of Joe's accounts. Although Joe testified that the California home was his premarital asset because he owned it "long before [he and Leia] ever met," the court determined that Leia was entitled to one-half of the remaining $83,696.68 based on joint title and Leia's contributions during the marriage. The equalization payment of $26,135.37 that the court ordered Joe to pay Leia is based in part on Leia's entitlement to those funds.

We agree that the evidence does not establish that Joe dissipated marital funds. Rather, the money spent from the $153,000 Joe withdrew from the parties' joint account was used to pay expenses. For instance, Joe made mortgage payments on the marital home from the time the parties' separated in May 2017 until the court entered a temporary order in April 2018 besides paying for his own housing during the same period. Joe also gave Leia some money for her expenses. The court included the remaining $83,696.68 in its property division, awarding half to Leia. In considering the overall property division, we find it to be equitable.

**VI. Appellate Attorney Fees and Costs.**

Both parties seek an award of appellate attorney fees. Joe also asks that Leia pay costs of the appeal.

An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). In deciding whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and the merits of the appeal. *See id.* After considering these factors, we decline to award either party appellate attorney fees. We assess costs of the appeal equally to both parties.

**AFFIRMED ON BOTH APPEALS.**