# IN THE COURT OF APPEALS OF IOWA

No. 23-1180
Filed July 3, 2024

**IN THE INTEREST OF C.S.,**
**Minor Child,**

**D.Z., Mother,**
    Petitioner-Appellee,

**A.S., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.

A father appeals the private termination of his parental rights.  **AFFIRMED.**

Leah Patton of Patton Legal Services, LLC, Ames, for appellant.

Amy K. Davis of Miller, Zimmerman & Evans, P.L.C., Des Moines, for

appellee.

Amy K. Davis of Miller, Zimmerman & Evans, P.L.C., Des Moines, guardian

ad litem for minor child.

Considered by Badding, P.J., Langholz, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**BOWER, Senior Judge.**

A father appeals the private termination of his parental rights under Iowa Code section 600A.8 (2022).  Because we conclude the grounds for termination were met and the best interests of the child favor termination, we affirm.

**I.      Background Facts and Proceedings**

The father and mother began a relationship in 2011.  The child was born the next year.  The parents lived together at the time of the child's birth.  The father provided financially for the family, while the mother was the primary caretaker of the child at issue and her two older children.  In 2015, the parents moved from Des Moines to an apartment in Norwalk but broke up several months later.  According to the mother, she ended the relationship due to the father's "drinking and gambling habits."  The father was ordered to pay child support for the child.[1]

The mother then entered a relationship with J.Z., whom she married in 2015.  The mother offered the father "opportunities [for visits] to be supervised at his mom's" house.[2]  Over the next few years, the father visited the child "two, maybe three times."  In "late 2017, early 2018," the mother and J.Z. separated briefly.  During that time, the father moved back into the mother's apartment in Norwalk for "a few months," under the condition he would not drink.  The relationship ended for good when the police were called to remove the father, who was intoxicated, from the property.  The mother and J.Z. then reunited, and they

---

[1] Initially, the father was ordered to pay $1101 per month; he subsequently petitioned to modify the child support amount to $587 per month.
[2] The mother explained she felt the visits should be supervised due to the father's drinking and "[b]ecause he wasn't stable."

had a child together shortly thereafter. The father last saw the child at issue at his preschool graduation in May 2018.

In March 2022, the father entered a residential treatment program. The treatment program staffed no licensed counselors. Rather, the father described the program as "faith based"; a "drug and alcohol addiction . . . program to find healing." In July 2022, the father filed a petition to establish custody and visitation for the child.

In December, the mother filed a petition to terminate the father's parental rights, alleging he abandoned the child. *See* Iowa Code § 600A.8(3). The mother further alleged the father "has been ordered to contribute to the support of the child and has failed to do so without good cause" and termination of the father's parental rights was in the child's best interests. *See id.* § 600A.8(4).

The termination hearing took place over three days in May and June 2023. The father testified he completed treatment in April 2023. He stated part of his aftercare was to abstain from alcohol and drugs, but he had not been required to take any urinalysis tests. The father did not participate in therapy or additional treatment, but he maintained he was "healed." He currently lived in a "transition house" with several other men who completed the program, "where [he] can be until [he] get[s] back on [his] feet." He believed the child could stay with him at the house. The father acknowledged he "waited too long to go to court" to attempt to establish visitation with the child but explained he did not want to "file with the State of Iowa until [he] was 100 percent sober." The mother testified, "I'm glad [the father] finally [completed a substance-use program] within ten years, but I have very bad feelings of relapse which I don't think my son should be involved." She

further stated the child "doesn't really remember [the father] nor wishes to be involved," and the child considered J.Z. to be his father. The mother testified J.Z. hoped to adopt the child if the father's parental rights were terminated. The guardian ad litem recommended termination of parental rights.

The district court entered an order terminating the father's parental rights, noting in part:

> Although [the father] did provide substantial sums of child support for C.D.S. over the years there have been lapses in support resulting in approximately $11,000.00 in arrears. More importantly, [the father] has failed to maintain contact with C.D.S., has not demonstrated a serious continued interest in the child, a genuine effort to maintain communication with the child or demonstrated the establishment and maintenance of a place of importance in the child's life. [The father] has made only a marginal effort to communicate with C.D.S.
>
> Although [the mother] was at times an obstruction to this contact, [the father] was well aware of the means to achieve contact with C.D.S. as evidenced by his past efforts to have custody and visitation with his daughter [D.Z]. In addition, [the father] knew where C.D.S. attended school and he was listed as C.D.S.'s parent allowing him access to all the information the school had regarding C.D.S. including contact information.
>
> [The father] has not seen, communicated, or lived with C.D.S. since 2018. The guardian ad litem report shows that C.D.S. is significantly estranged from [the father] because of this large gap of contact between father and child.
>
> [The father] sat on his rights to attempt to have custody or contact with C.D.S. He had the knowledge and ability to make this attempt. It is commendable that [the father] entered the Sheepgate program in order to be a better parent. But, to wait until he finished the program to have contact with his child again demonstrates a lack of effort on his part and denied C.D.S. contact with his father no matter what the circumstances. Why should C.D.S. or any child be made to wait to have a meaningful relationship with his father?
>
> At this point it is in the best interests of C.D.S. that [the father]'s parental rights be terminated.

The father appeals the court's order.

## II.    Standard of Review

Termination of parental rights under chapter 600A involves a two-step process of (1) establishing a statutory ground for termination, and (2) proving termination is in the child's best interest. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020).  Both steps require proof by clear and convincing evidence. *Id.*

We review private termination proceedings under chapter 600A de novo. *Id.*  "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *Id.* (citation omitted); *see* Iowa R. App. P. 6.904(3)(g).  The best interests of the child is the paramount consideration.  Iowa Code § 600A.1.

## III.    Evidentiary Challenges

At the outset, we address the father's challenge to the district court's consideration of "statements in the guardian ad litem report and substance-abuse articles," which "were not admitted into evidence and were not judicially noticed." Relating to the guardian ad litem's report, we observe it was filed on May 23, 2023; accordingly, it was part of the record before the court at the termination hearing. Moreover, at the hearing, the guardian ad litem referenced her "previously filed" report and declined to "alter or amend" it "in any way."  Neither party objected to the court's consideration of the report.  We find this issue waived.

Relating to "substance-abuse articles," the court stated as follows:

> [I]t is a generally held belief by health professionals that alcoholism is an addiction and a disease with no cure that requires vigilance, treatment and management.  (*See* American Addiction Centers, September 7, 2022 article "Is There a Cure for Alcoholism.").  The National Institute on Alcohol Abuse and Alcoholism has said that overcoming alcohol abuse is an ongoing process that can include setbacks and relapses.  (*See* "Alcohol's Effects on Health," National

Institute on Alcohol Abuse and Alcoholism, NIH Publication No: 21-Aa-7974, 2014, updated October 2022). [The father] appears to have a lack of insight to the realities of alcoholism. To his credit, [the father] has remained sober for approximately 15 months.

The articles mentioned by the court are not part of the record. However, "[t]o the extent any evidence was improperly considered by the district court, reversal is not required given our de novo review of the record on appeal." *Erickson v. Blake*, No. 15-0251, 2016 WL 1130578, at *1 (Iowa Ct. App. Mar. 23, 2016). In our de novo review of the father's appeal, we do not consider the challenged evidence or the court's statements relating to the articles. *See In re Marriage of Anderson,* 509 N.W.2d 138, 142 (Iowa Ct. App. 1993) (holding there is no need to rule on admissibility of evidence because the court did not consider the challenged evidence in its de novo review).

## IV.     Analysis

The district court terminated the father's parental rights pursuant to Iowa Code section 600A.8(3) and section 600A.8(4).[3] We focus on section 600A.8(3), which provides:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

---

[3] Section 600A.8(4) allows termination if "[a] parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause." Although there is no dispute the father was "approximately $11,000.00 in arrears" on his child-support obligation, we need only find clear and convincing evidence to support termination under one ground to affirm.

> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b). Chapter 600A also defines abandoning a minor child as "reject[ing] the duties imposed by the parent-child relationship . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." *Id.* § 600A.2(20). A parent's subjective intent "unsupported by evidence of acts specified in [section 600A.8(3)(b)] . . ., does not preclude a determination that the parent has abandoned the child." *Id.* § 600A.8(3)(c).

Based on our de novo review, we find the father lived with the child for approximately two years after the child's birth. During that time, the father acknowledged he worked "50 to 60 hours a week" and his involvement with the child was limited to putting him to bed. The father also acknowledged he started drinking when he got home from work and consumed "approximately a 12-pack per night." Between 2015 and 2018, the father visited the child "two, maybe three times." The father again lived with the mother and child in early 2018 for a few months, until they broke up in May 2018. At the time of the termination hearing, the father had not seen the child in five years.

The father gave several reasons to explain his absence from the child's life, including he did not know how to "get ahold of" the mother.[4] In 2022, the father asked his teenage daughter, who he described as "very technologically sound," to help "investigate." The daughter, "through Google on the phone, . . . found [the assessor's] website" and learned the mother's address.[5] Yet, there were other ways the father could have contacted the mother had he chosen to do so. For instance, the record shows the father was aware the child had been enrolled in the Norwalk Community School District since preschool, as he was listed as a parent on enrollment forms and he received communications from the school district. The father stated he had "been to the school" and he agreed he "could have" "talked to school administration," "but it was uncomfortable." Also, the maternal grandmother testified the father's mother and sister had contacted her a few times in the past to facilitate contact with the child, requests she had obliged. She testified the father also had her phone number, which had not changed for "[a]t least 26 years." The father also testified he intentionally refrained from contact with the child until he was sober. However, we observe the father waited until 2022 to address his addiction. By that time, the child was ten years old and did not remember who the father was. Upon our de novo review, we conclude the mother proved the statutory ground of abandonment under section 600A.8(3)(b).

We also conclude that the mother proved termination of the father's parental rights is in the child's best interests. "The best interest of a child requires that each

---

[4] We observe this contention does not account for the years between 2015 and 2018, during which the father saw the child less than a handful of times.

[5] The father acknowledged he "could have done a computer search, and [he] didn't do that" because "[t]hat's not the way [he] operate[s]."

biological parent affirmatively assume the duties encompassed by the role of being a parent." *Id.* § 600A.1(2). Our considerations include "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.* We also look to the best-interest framework in Iowa Code chapter 232. *B.H.A.*, 938 N.W.2d at 232. Under that framework we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

We acknowledge the father provided some financial support—albeit not consistently—for the child through wage assignment over the years. Financial support, however, is not enough to fulfill a parental role for the child. Although the father may have maintained an internal interest in the child, he has not manifested an objective place of importance in the child's life. *See id.* § 600A.1(2). The guardian ad litem reported the child was "not open to the idea of having [the father] back in his life," and she opined the child's "mental health would likely suffer if visitation were to resume at this point, particularly against his stated desires." The guardian ad litem noted the child, "[a]t 10 years old," "is at an age where lots of things are beginning to change for him—physically and emotionally." She did not believe "re-introduction of [the father] at this point in time is in [the child's] best interest." The father was absent during the vast majority of the child's life, and they no longer share a relationship. Meanwhile, the mother has provided for all the child's needs. Moreover, J.Z. has been in the child's life since at least 2015, has

a fatherly relationship with the child, and would like to adopt him. *See In re Q.G.*, 911 N.W.2d 761, 772 (Iowa 2018) (factoring a stepfather's desire to adopt the child into best-interests analysis). We conclude the mother proved termination of the father's parental rights is in the child's best interest.

Accordingly, we affirm.

**AFFIRMED.**